**ORANGE COUNTY, California Airport Hotel Associates, a California Limited Partnership, Plaintiff–Appellant,**

v.

**The HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, Defendant–Appellee.**

No. 94–56037.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1994.

Decided April 24, 1995.

James S. Renard and Richard A. Burton, Bickel & Brewer, Dallas, TX, for plaintiff-appellant.

Tom Lallas, Levy, Small & Lallas, Los Angeles, CA, for defendant-appellee.

Before: WALLACE, Chief Judge, REINHARDT and BRUNETTI, Circuit Judges.

WALLACE, Chief Judge:

This appeal concerns a district court's order expunging a lis pendens pursuant to California law. Orange County, California Airport Hotel Associates, a California Limited Partnership (Partnership) appeals from the district court's order granting the motion of the Hongkong and Shanghai Banking Corporation Limited (Bank) to expunge the Partnership's lis pendens concerning the Crown Sterling Suites Hotel in Orange County, California (Hotel). The district court had jurisdiction on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332. We conclude that this court lacks appellate jurisdiction to review the district court's order. The appeal is dismissed.

I

In 1986, the Bank loaned the Partnership $22 million secured by a first deed of trust in favor of the Bank encumbering the Hotel. After the Partnership defaulted on the loan, the Bank initiated judicial foreclosure proceedings in state court. The Partnership filed a cross-complaint, which was dismissed on summary judgment. While the appeal of the dismissal of the Partnership's cross-complaint was pending, the parties agreed to settle the dispute between them. The parties ultimately entered into a Stipulation for Settlement of Case and Dismissal of Claims (Settlement Agreement) which was filed and approved by the state court.

Under the terms of the Settlement Agreement, the Bank was permitted to proceed with the foreclosure sale of the Hotel. It provided that if the Bank was the successful bidder at the foreclosure sale, the Partnership would have a two-year right of first refusal to repurchase the Hotel from the Bank.

The terms of the right of first refusal were as follows. If the Bank received an offer for the Hotel that it was "willing to accept," it was required to communicate the terms of the offer to the Partnership. The Bank would be required to allow the Partnership to purchase the Hotel under the same terms as provided in the offer made by the third-party, with two exceptions. First, the Partnership would have to pay a nonrefundable option fee and second, the Bank would "[u]nder no circumstance" be required to provide financing of any part of the purchase price, even if it were required to do so under the terms of the offer made by a third-party. The Partnership would then have 14 days in which to exercise its right to purchase the Hotel.

Before the expiration of the right of first refusal, the Bank listed the Hotel for sale. An entity named Osar Ltd. submitted a bid for $18,100,000. The Partnership asserts that the Bank rejected this bid, but the Bank maintains that Osar Ltd. revoked the bid and replaced it with one for $15,000,000.

Shortly after the right of first refusal had expired, the Bank received an offer from the Windsor Capital Group to purchase the Hotel for $18,000,000. The Bank extended to the Partnership the right to purchase the Hotel under the same terms as provided in the Settlement Agreement. The Partnership, however, was either unwilling or unable to purchase the Hotel without financing by the Bank. The Bank ultimately accepted Windsor Capital Group's offer.

In April 1994, the Partnership filed a complaint in federal district court, requesting the imposition of a constructive trust, reformation of the Settlement Agreement, and injunctive, declaratory, and pecuniary relief on theories of breach of contract, breach of implied covenant of good faith and fair dealing, and fraud. About six weeks later, the Partnership recorded a lis pendens or Notice of Pendency of Action on the Hotel property. The Bank then filed a motion to expunge the lis pendens as well as a motion for summary judgment. The district court denied the Bank's motion for summary judgment, but granted the motion to expunge the lis pendens. On appeal, the Partnership asserts that the district court abused its discretion in expunging the lis pendens.

II

At the outset, we must determine whether we have jurisdiction to decide this appeal.

The Bank argues that no basis exists for this court to exercise appellate jurisdiction. The Partnership, however, maintains that the district court's order is an appealable collateral order under 28 U.S.C. § 1291 or that it is appealable under 28 U.S.C. § 1292 as an order having the practical effect of refusing an injunction.

### A.

28 U.S.C. § 1291 provides that the courts of appeals may review only "final" decisions of district courts. A "final" decision has been described as one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988) (*Van Cauwenberghe*), quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). The order expunging the lis pendens obviously does not end the litigation on the merits. Thus, the district's order expunging the lis pendens is not a final decision for purposes of 28 U.S.C. § 1291. *Accord Mohasco Indus. v. Lydick*, 459 F.2d 959, 960 (9th Cir.1972) (order vacating attachment not a final order). The Partnership argues, however, that we have jurisdiction over this appeal under the collateral order doctrine, which creates a small class of orders that are appealable under 28 U.S.C. § 1291 even though they do not end the litigation on the merits. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949) (*Cohen*).

To be appealable under the collateral order doctrine, an order must satisfy three requirements: the order must (1) "conclusively determine a disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (*Coopers & Lybrand*); *see also United States v. Szado*, 912 F.2d 390, 391 (9th Cir.1990) (same).

The Third Circuit recently held that a district court order discharging a notice of lis pendens under New Jersey law was not ap-pealable under the collateral order doctrine. *Demenus v. Tinton 35 Inc.*, 873 F.2d 50 (3d Cir.1989) (*Demenus*). *Demenus* is instructive. The New Jersey lis pendens statute in *Demenus* required the trial court to evaluate the likelihood that the plaintiff will prevail on the merits in ruling on a motion to discharge a notice of lis pendens. Thus, the court concluded that the requirement that the order "resolve an important issue *completely separate from the merits of the action*," *Coopers & Lybrand*, 437 U.S. at 468, 98 S.Ct. at 2458 (emphasis added), could not be met. As the Third Circuit explained, "[b]ecause N.J.S.A. § 2A:15–7(b) requires the district court to determine the 'probability that final judgment will be entered in favor of the plaintiff' in ruling on a motion to discharge a notice of lis pendens, we are indeed 'thrust ... into the merits of the underlying dispute' when we review a district court order ruling on such a motion." *Demenus*, 873 F.2d at 52, *discussing and quoting Van Cauwenberghe*, 486 U.S. at 528, 108 S.Ct. at 1953.

In support of its view that to be appealable the order must resolve an important issue completely separate from the merits, *Demenus* relied upon *Van Cauwenberghe*. Although *Van Cauwenberghe* addressed whether an order concerning a forum non conveniens motion was appealable as a collateral order, the opinion indicated that the Court has tightened the requirement that the order resolve an important issue completely separate from the merits of the action. The Court not only reiterated "the principle that there should not be piecemeal review of 'steps towards final judgment in which they will merge,'" 486 U.S. at 527, 108 S.Ct. at 1952, *quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 12 n. 13, 103 S.Ct. 927, 935 n. 13, 74 L.Ed.2d 765 (1983), *further quoting Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225, but also explained that "[a]llowing appeals from interlocutory orders that involve considerations enmeshed in the merits of the dispute would waste judicial resources by requiring appellate review of substantive questions in the case." *Id.* at 527–28, 108 S.Ct. at 1952.

The California lis pendens statute requires the trial court to expunge the lis pendens if

the "claimant has not established by a preponderance of the evidence the probable validity of the real property claim." Cal.Code Civ.Proc. § 405.32 (1992). "Probable validity" meaning that "it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." *Id.* § 405.3. Thus, like the statute at issue in *Demenus,* the California lis pendens statute requires the court to evaluate the merits of the underlying claim. Both the appellant in *Demenus* and the Partnership here argue that it had submitted sufficient evidence to establish the probable validity of its claims.

We agree with the Third Circuit's analysis and hold that the district court's order expunging the lis pendens is not an appealable collateral order because the determination of whether the claimant has established the probable validity of his real property claim will thrust this court into the merits of the dispute. The rule makes good sense. The interlocutory appeal of orders that require courts of appeals to evaluate the merits of the underlying litigation unnecessarily places additional demands on our increasingly scarce judicial resources. The requirement that the order resolve issues completely separate from the merits "relate[s] closely to the basic purposes of the final judgment rule itself. In part, it helps protect against repetitive consideration of the same matters by the court of appeals." 15 Charles A. Wright et al., Federal Practice and Procedure § 3911 (1992). Only "so long as the matter is so collateral that it need not entail consideration of the merits," may it be "reviewed immediately with no greater cost in appellate time than if review were postponed." *Id.* Because the review of such orders is more efficiently conducted along with the review of any other grounds for appeal after final judgment has been entered, we must strictly adhere to the requirement that the order resolve an important issue completely separate from the merits.

The only road block to our adoption of the Third Circuit analysis is *Preston v. United States,* 284 F.2d 514 (9th Cir.1960), where we concluded that an appeal from, among other things, an "Ancillary Order Quashing Notice of Pendency of Action" did come within the collateral order doctrine. *Id.* at 515 n. 1. Although other orders were also at issue there, we did state, albeit in a footnote, that "[t]he orders appealed from seem to fall within the sweep of [the collateral order doctrine]." *Id.* (emphasis added).

*Preston* is distinguishable. That case did not involve the present California statute governing the expungement of a lis pendens. As the Code Comment to section 405.32 makes clear, the 1992 amendments to the California lis pendens statute fundamentally altered the requirements for expunging a lis pendens. Under prior law, the court did not make inquiry into the merits of the dispute now required by section 405.32. *Compare* Cal.Code Civ.Proc. § 405.32 & comments 1, 3, 4, 6 (1992), *with Malcolm v. Superior Court,* 29 Cal.3d 518, 522, 174 Cal.Rptr. 694, 629 P.2d 495 (1981) (*Malcolm*) (California's former lis pendens statute "did not intend to transform the pretrial lis pendens expungement procedure into a 'mini-trial' on the merits of the case, but rather intended to require expungement only when ... the action was [not] commenced for a proper purpose and in good faith.").

Several other circuits have concluded that the expungement of a lis pendens constitutes an appealable collateral order. *See Hill v. Department of the Air Force,* 884 F.2d 1321, 1322 (10th Cir.1989); *S.B. McLaughlin & Co. v. Tudor Oaks Condominium Project,* 877 F.2d 707, 708 (8th Cir.1989), *citing Keith v. Bratton,* 738 F.2d 314, 316 (8th Cir.1984); *Chrysler Corp. v. Fedders Corp.,* 670 F.2d 1316, 1318 n. 2 (3d Cir.1982) (*Chrysler Corp.*); *Suess v. Stapp,* 407 F.2d 662, 663 (7th Cir. 1969). *Cf. H & S Plumbing Supplies v. BancAmerica Commercial Corp.,* 830 F.2d 4, 6 (2d Cir.1987) (order *denying* motion to vacate notice of pendency not appealable collateral order).

However, these cases are distinguishable on the same ground as *Preston.* None required the court to evaluate the merits of the dispute. Although *Chrysler Corp.* employed New Jersey's lis pendens scheme, which is similar to California's present scheme, the issue before the court in *Chrysler Corp.* did not involve the merits of the underlying dispute, but the completely separate question of

whether the lis pendens procedure itself was constitutionally valid. *See Demenus,* 873 F.2d at 54 (distinguishing *Chrysler Corp.* on same grounds).

Because we conclude that the order does not resolve an important issue separate from the merits of the action, we need not determine whether it is effectively unreviewable on appeal or whether it conclusively resolves the disputed question. One of the three necessary requirements of the collateral order doctrine has not been met in this case.

### B.

■ The Partnership asserts that even if the order is not appealable under the collateral order doctrine, it should nonetheless be appealable under 28 U.S.C. § 1292(a)(1) because it has the practical effect of refusing an injunction. 28 U.S.C. § 1292(a)(1) provides that "the courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions." An order expunging a lis pendens is obviously not an order "modifying, refusing or dissolving injunctions" subject to interlocutory appeal pursuant to section 1292(a)(1).

However, in *Carson v. American Brands,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) (*Carson*), the Supreme Court held that an order may be appealable under section 1292(a)(1) if it has the "practical effect" of denying a preliminary injunction. *Id.* In addition, the interlocutory order must not only (1) have "the practical effect of denying an injunction," but also (2) "must have 'serious, perhaps irreparable consequences,'" and (3) "be one that can be 'effectively challenged' only by immediate appeal." *Sierra Club v. Electronic Controls Design,* 909 F.2d 1350, 1353 (9th Cir.1990). We focus on the first of the three requirements.

In determining whether an order has the practical effect of granting or denying an injunction we "look to its substantial effect rather than its terminology." *Tagupa v. East–West Center,* 642 F.2d 1127, 1129 (9th Cir.1981), *quoting United States v. Cities Service Co.,* 410 F.2d 662, 663 n. 1 (1st

Cir.1969); *see also Nguyen Da Yen v. Kissinger,* 528 F.2d 1194, 1199 n. 4 (9th Cir. 1975) ("appealability turns not on labels but on the substantial impact of the order"). Nevertheless, "[b]ecause § 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, [the Court has] construed the statute narrowly." *Carson,* 450 U.S. at 84, 101 S.Ct. at 996.

At first blush, a lis pendens appears to serve the same purpose as a preliminary injunction. As the California Court of Appeal has stated, "a notice of lis pendens and a preliminary injunction are both remedies to preserve the status quo pending the outcome of an action." *Coppinger v. Superior Court,* 134 Cal.App.3d 883, 888–89, 185 Cal.Rptr. 24 (1982). The California Supreme Court explained that "[a]s a practical matter, the filing of a lis pendens usually clouds the title to the property and prevents its transfer until the litigation is resolved or the lis pendens is expunged." *Malcolm,* 29 Cal.3d at 523 n. 2, 174 Cal.Rptr. 694, 629 P.2d 495.

While the purpose and ultimate effect of a lis pendens resemble those of a preliminary injunction, a lis pendens and a preliminary injunction are dissimilar in important respects. A preliminary injunction absolutely forbids the relevant parties from selling the subject property, and is backed by the sanction of contempt. A lis pendens, on the other hand, does not absolutely forbid the sale of the subject property. Rather, the recording of a lis pendens merely gives potential purchasers constructive notice of the pending proceedings ensuring that anyone "who acquires an interest in the property takes subject to any judgment that may be rendered therein." *Id., quoting Albertson v. Raboff,* 46 Cal.2d 375, 379, 295 P.2d 405 (1956).

In determining whether an order has the practical effect of granting or denying an injunction, we evaluate the order in light of the essential attributes of an injunction. The three fundamental characteristics of an injunction are that it is (1) "directed to a party," (2) "enforceable by contempt," and (3) "designed to accord or protect 'some or all of the substantive relief sought by a complaint' in more than preliminary fashion." 16 Charles A. Wright et al., Federal Practice

and Procedure § 3922 at 29 (1977), *quoting International Prods. Corp. v. Koons,* 325 F.2d 403, 406 (2d Cir.1963); *Cohen v. Board of Trustees of Univ. of Medicine & Dentistry,* 867 F.2d 1455, 1465 n. 9 (3d Cir.1989) (in banc) (*Board of Trustees* ) (adopting same definition); *I.A.M. Nat'l Pension Fund v. Cooper Indus.,* 789 F.2d 21, 24 (D.C.Cir.) (same), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986). A lis pendens does attempt to protect the substantive relief sought in the complaint by providing notice to any purchaser of the real property at issue in the suit. However, a lis pendens is neither directed at a party nor enforceable by contempt.

■ The Third Circuit considered the availability of contempt to be a critical factor in determining whether an order is injunctive for purposes of section 1292(a)(1). As the Third Circuit explained:

> The chief distinction between actions at law and actions in equity seeking injunctive relief, thus lies in the mode of execution. Equity acts on the person, who can be held in contempt for noncompliance. Actions at law ... on the other hand, can only be enforced by execution after final judgment. This distinction further defines what is an injunction for purposes of section 1292(a)(1). The order must not only adjudicate some of the relief sought in the complaint; it must also be of such a nature that if it grants relief it could be enforced pendente lite by contempt if necessary.

*Board of Trustees,* 867 F.2d at 1465. We adopt this analysis. The fact that the lis pendens does not compel a party to act or refrain from acting under threat of contempt fundamentally distinguishes it from an injunction.

Our conclusion that the expungement of a lis pendens is not the functional equivalent of the denial of an injunction is also supported by the relevant authority pertaining to the appealability of orders of attachment. The "[e]nforcement of the traditional security devices of attachment and replevin is ordinarily thought not to involve an injunction within the meaning of [28 U.S.C. § 1292(a)(1) ]." 16 Charles A. Wright, Federal Practice and Procedure § 3922 at 43 (1977). This position

is consistent with cases from a number of circuits that have declared that orders of attachment are not injunctive in nature and therefore not appealable under section 1292(a)(1). The Seventh Circuit has explained that "the distinction between attachments and injunctions has been so long recognized that we are convinced that Congress would have provided for interlocutory appeals in cases such as this had it deemed such appeals desirable." *Rosenfeldt v. Comprehensive Account. Serv. Corp.,* 514 F.2d 607, 609 (7th Cir.1975) (*Rosenfeldt* ), *quoting American Mortgage Corp. v. First Nat'l Mortgage Co.,* 345 F.2d 527, 528 (7th Cir. 1965). Similarly, the First Circuit has stated that "[f]or historical reasons, court ordered 'attachments,' even where coercive and designed to protect ultimate relief, are typically considered to be 'legal,' not 'equitable,' in nature, and therefore are not 'injunctions' for § 1292(a)(1) purposes." *Bogosian v. Woloohojian Realty Corp.,* 923 F.2d 898, 901 (1st Cir.1991). Moreover, the Third Circuit has remarked that "orders attaching security for a judgment ultimately to be rendered have been held not to fall under section 1292(a)(1), even though such orders have a significant impact on the parties whose property is affected." *Board of Trustees,* 867 F.2d at 1464.

A leading treatise has explained that there is good reason to treat traditional security devices such as attachments (or, in this case, a lis pendens) as not being injunctive for purposes of section 1292(a)(1):

> So long as the order is not directed to the party, this result seems correct for a variety of reasons. In part, the statute was adopted at a time when the technical distinctions between injunctions issued in equity, and the traditional security devices available in actions at law, must have been even more sharply drawn than it is now. In addition, the safeguards of bond or other security commonly associated with such security devices may frequently reduce substantially the danger of irreparable harm, particularly in light of the requirements of notice and opportunity for hearing being developed in current due process decisions.

16 Charles A. Wright, Federal Practice and Procedure § 3922 at 43 (1977) (footnotes omitted).

The reasoning that supports the conclusion that orders of attachment are not injunctive in nature also supports the conclusion that an order expunging a lis pendens is not injunctive. *In re Unanue Casal,* 998 F.2d 28, 32–33 (1st Cir.1993) ("Orders imposing lis pendens have been viewed as 'attachments' for section 1292(a) purposes."). Unlike an injunction, which has traditionally been a creature of equity, the lis pendens is a legal remedy created by statute and governed by a complex statutory scheme that effectively curtails the discretion of the district court. Indeed, California's lis pendens scheme provides detailed procedures and standards to be followed by the district court, including provisions for a hearing and the giving of a bond or undertaking when appropriate. *See* Cal.Code Civ.Proc. §§ 405–405.61 (1992). These procedural and substantive safeguards make it less likely that immediate appellate review will be necessary to prevent irreparable injury. *See Federal Land Bank of Spokane v. L.R. Ranch Co.,* 926 F.2d 859, 864 (9th Cir.1991) (denial of motion to stay state foreclosure proceedings is not effectively an injunction; procedural safeguards make irreparable harm unlikely).

One case contrary to our analysis is *Beefy King Int'l v. Veigle,* 464 F.2d 1102 (5th Cir. 1972), in which the Fifth Circuit stated that an order discharging a lis pendens "should be treated in the same manner as a denial, dissolution, or modification of an injunction." *Id.* at 1104. But *Beefy King* is prior to *Carson* and its tripartite test, and cites *Suess,* a case that does not hold that the expungement of a lis pendens is appealable under section 1292(a)(1). *See Rosenfeldt,* 514 F.2d at 609 n. 2 (explaining that *Beefy King*s citation to *Suess* is erroneous). *Beefy King* does not change our mind.

Because we conclude that the district court's order expunging the lis pendens does not have the practical effect of refusing an injunction, it is unnecessary to determine whether the order has "serious, perhaps irreparable consequences" and whether the order can be effectively challenged only by immediate appeal. The order is not appealable under section 1292(a)(1).

APPEAL DISMISSED.