In re **LORILLARD TOBACCO COMPANY**, Plaintiff– Appellant.

No. 03–16553.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 2004.

Filed June 7, 2004.

John R. Bailey, David J. Merrill, and Joshua M. Dickey, Law Offices of John R. Bailey, Las Vegas, NV, for the plaintiff-appellant.

Before: WALLACE, McKEOWN, and CALLAHAN, Circuit Judges.

McKEOWN, Circuit Judge:

 This case arises from the district court's denial of Lorillard Tobacco Company's application for an ex parte order to seize purportedly counterfeit cigarettes. Upon Lorillard's timely appeal, we find ourselves confronted with a novel issue of appellate jurisdiction. To date, only one court has faced the question whether a seizure order authorized under the trademark law, 15 U.S.C. § 1116(d), is an injunction, and whether an interlocutory order denying seizure is thus appealable under 28 U.S.C. § 1292(a)(1). *See Vuitton v. White*, 945 F.2d 569, 572 (3d Cir.1991) (holding appellate jurisdiction proper). Careful analysis of the language and legislative history of the statute that authorizes seizure leads us to the opposite conclusion. Because the district court's denial of a motion for an ex parte seizure order is neither an automatically appealable literal refusal of an injunction nor a practical denial of ultimate injunctive relief, *see Carson v. American Brands, Inc.*, 450 U.S. 79, 83–84, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), we lack jurisdiction to consider Lorillard's appeal.

## I. BACKGROUND

Lorillard Tobacco Company manufactures and holds several registered trademarks associated with Newport cigarettes. Lorillard sued John Doe,[1] the operator of a Nevada retail store, for federal trademark violations under 15 U.S.C. §§ 1114 and 1125, alleging that Doe sold cigarettes bearing counterfeit Newport trademarks. Lorillard sought an ex parte order pursuant to 15 U.S.C. § 1116(d)(1) to seize and impound cigarette packages and other evidence of counterfeiting believed to be in Doe's possession. The district court denied the motion.

## II. APPELLATE JURISDICTION

Before we entertain Lorillard's arguments on the merits, we must have jurisdiction over the appeal. As a general rule, appellate jurisdiction is limited to "final decisions of the district courts of the United States." 28 U.S.C. § 1291. Recognizing that this is not a case where the district court's ruling "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945), Lorillard argues that 28 U.S.C. § 1292(a)(1) allows us to decide its appeal from the district court's order. We disagree.

Section 1292(a)(1) vests the courts of appeals with jurisdiction over "appeals from ... [i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." The touchstone of § 1292(a)(1) is an injunction order. If the § 1116(d) ex parte seizure order is an "injunction," the district court's denial of Lorillard's motion falls under the umbrella of this statute, and thus is appealable as of right. *See Shee Atika v. Sealaska Corp.*, 39 F.3d 247, 249 (9th Cir.1994) (holding that an order denying a request for an injunction is reviewable on appeal, and declining to impose any further test for appealability). We must "therefore look to the statute before us and ask [whether] Congress intended" the ex parte seizure order to be an injunction. *Almendarez–Torres v. United States*, 523 U.S. 224, 228, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

1. All proceedings so far have been ex parte and filed under seal. Because publication of the defendant's identity at this stage arguably could prejudice Lorillard's case, the defendant is designated as "John Doe" or "Doe."

## A. THE EX PARTE SEIZURE STATUTE

 We begin our analysis with the text of 15 U.S.C. § 1116(d)(1)(A),[2] the statute that authorizes federal courts to grant ex parte seizure orders:[3]

> In the case of a civil action arising under [15 U.S.C. § 1114(1)(a) (creating a right to civil remedies for trademark infringement)] ... with respect to a violation that consists of using a counterfeit mark ..., the court may, upon ex parte application, grant an order under subsection (a) of this section pursuant to this subsection providing for the seizure of goods and counterfeit marks involved in [a violation involving use of counterfeit marks] and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation.

15 U.S.C. § 1116(d)(1)(A). Under this provision, a district court may issue an ex parte seizure order in civil actions alleging a trademark infringement that involves the use of a counterfeit mark. *See* 15 U.S.C. § 1114("Any person who shall ... use in commerce any ... counterfeit ... of a registered mark ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.").

The statutory reference to "grant[ing] an order under subsection (a) of this section" refers to 15 U.S.C. § 1116(a). Section 1116(a) vests federal district courts with the "power to grant injunctions" and the power to enforce"[a]ny such injunction *granted upon hearing, after notice to the defendant.*" 15 U.S.C. § 1116(a) (emphasis added). The "injunction" language in subsection (a) is the only possible source of support in the statute for the argument that the subsection (d) seizure order is an injunction.[4] *See Vuitton*, 945 F.2d at 572

**2.** The "language, structure, subject matter, context, and history" are all "factors that typically help ... illuminate[a statute's] text." *Almendarez–Torres*, 523 U.S. at 228, 118 S.Ct. 1219. In undertaking our statutory analysis, we of course first turn to the text of the statute. *See, e.g., Castillo v. United States*, 530 U.S. 120, 124, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000) (looking first to "the statute's literal language"). Here, it is particularly important to heed the Supreme Court's guidance that we should look not only to the text of the statute but to the overall structure as well. *Id.* ("The statute's structure clarifies any ambiguity inherent in its literal language.").

**3.** Following *Shee Atika*, we are compelled to take on the analysis of whether the appeal "fall[s] directly within the meaning of" 28 U.S.C. § 1292(a)(1). 39 F.3d at 249. The law of this circuit does not allow us to avoid deciding whether a seizure order is an "injunction" by denying jurisdiction on other grounds. *Compare Shee Atika, id., with General Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 108 (2d Cir.1986) (declining to "resolve this contest of equivalences" between the parties over whether the seizure order is more like an injunction or an attachment, and holding that jurisdiction over the appeal of the grant of a seizure order was not proper under 28 U.S.C. § 1292(a)(1) because the appellant failed to meet its burden of satisfying the Second Circuit's additional test for appealability).

**4.** It is true that the Third Circuit has additionally suggested that because section 1116 is entitled "Injunctive relief," the seizure order described in subsection (d) must be a form of "injunctive relief." *Vuitton*, 945 F.2d at 572. We find this indiscriminate adherence to the section title unpersuasive. Following the *Vuitton* court's logic, the other subjects addressed in § 1116, such as the procedural requirements described by subsection (b) ("Transfer of certified copies of court papers") and subsection (c) ("Notice to Director"), would also be injunctive relief. Courts have generally eschewed reliance on legislative labels to the exclusion of the statutory language. *See, e.g., Bhd. of R.R. Trainmen v. Balt. & Ohio R.R.*, 331 U.S. 519, 528, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947) ("Th[e] heading [of a statutory section] is but a shorthand reference to the general subject matter involved ... [and is] not meant to take the place of the detailed provisions of the text.").

(reasoning that because § 1116(d) states that a court may "grant an [ex parte seizure] order *under* subsection (a)," the power to do so must arise from subsection (a) (emphasis added)).

In our view, subsection (d) itself creates the power of the court to grant an ex parte seizure order. The words "under subsection (a)" were included simply to specify that this power is intended to apply to civil proceedings in equity for trademark violations—and that § 1116(d) was not meant to enable the court to grant an ex parte seizure order under other circumstances. After careful consideration of the relationship between subsections (a) and (d), we are not persuaded that this single statutory cross-reference can transform an ex parte order into an appealable injunction.

Although there may be some superficial appeal to the *Vuitton* court's interpretation, its approach yields awkward results. Subsection (a) authorizes enforcement only of injunctions issued following notice and a hearing—which, by definition, excludes ex parte seizure orders. Thus, in order to conclude that the seizure order is a subsection (a) injunction, we would have to attribute to Congress the illogical intent to empower courts to grant unenforceable injunctions. Because we decline to take such a dim view of the legislative endeavor, we conclude that the plain language of § 1116 does not support Lorillard's argument that an ex parte seizure order is an injunction.

## B. LEGISLATIVE HISTORY

Even if we viewed the cross-reference to subsection (a) as introducing an element of ambiguity into the statute, which we doubt, the legislative history of 15 U.S.C. § 1116(d) clarifies that Congress did not intend to create an injunction.[5] The House Report on the Trademark Counterfeiting Act of 1984 is explicit: "A seizure is not the same as an injunction, which generally restrains the defendant from acting in a certain way." H.R.Rep. No. 98–997, at 15 (1984).[6]

The Senate Report is in accord, explaining that "at the hearing held after the seizure, ... the court may retain custody of the [seized] goods, even if the plaintiff fails to meet some other requirement for *issuance of an injunction* ...." S.Rep. No. 98–526, at 17 (1984), U.S. Code Cong. & Admin.News at 3627, 3643 (emphasis added). The report pointedly distinguishes between the seizure order and the injunction, and contemplates that the seizure order issues before the court decides whether an injunction is proper. If the seizure order were itself an injunction, the italicized language would make little sense.

Finally, although the legislative history also reveals that the procedures for ex parte orders "are largely derived from the existing requirements of rule 65 of the Federal Rules of Civil Procedure," Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12,076, H12,-080 (1984), this characteristic is, at best, neutral in divining congressional intent. Rule 65 governs both preliminary injunc-

---

5. "Only if an ambiguity exists in the statute, or when an absurd construction results, does this court refer to the statute's legislative history." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

6. The report goes on to elaborate the differences between the two remedies: "While the courts have the authority to order 'mandatory' injunctions, which require the defendant to act in a certain way, the Committee believes that seizures of the defendant's property, without giving the defendant the opportunity to be heard, present appreciably different ... issues." H.R.Rep. No. 98–997, at 15–16.

tions and temporary restraining orders, and the latter are generally not appealable as of right. Fed.R.Civ.P. 65(b); *Religious Tech. Ctr. v. Scott,* 869 F.2d 1306, 1308 (9th Cir.1989). Adaptation of Rule 65's procedures does not somehow transform the ex parte order into an appealable injunction.

Taken together, the House and Senate Reports indicate that Congress intended to create something sui generis—and not an injunction—when it enacted 15 U.S.C. § 1116(d).

## C. THE NATURE OF AN "INJUNCTION"

 Although the language of 15 U.S.C. § 1116 and its legislative history plainly show that Congress intended to distinguish the ex parte seizure order from an injunction, it is useful to consider whether the seizure order nevertheless bears the indicia of an injunction. The target of our inquiry is well-defined by this circuit's case law. "The three fundamental characteristics of an injunction are that it is (1)'directed to a party,' (2) 'enforceable by contempt,' and (3)'designed to accord or protect some or all of the substantive relief sought by a complaint in more than [temporary] fashion." *Orange County, Cal. Airport Hotel Assocs. v. Hongkong & Shanghai Banking Corp.,* 52 F.3d 821, 825 (9th Cir.1995) (quoting 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3922, at 29 (1977)) (bracketed word changed from "preliminary" to "temporary" to reflect the 1996 edition of *Federal Practice and Procedure;* internal quota-

tion marks omitted); *see also Gon v. First State Ins. Co.,* 871 F.2d 863, 865 (9th Cir. 1989).[7]

The ex parte seizure order misses the mark on all three criteria of an injunction. It is not "directed to a party." Instead, the order commands action from a federal or local law enforcement officer. *See* 15 U.S.C. § 1116(d)(9). It is not enforceable by contempt. *See* 15 U.S.C. § 1116(a) (permitting contempt proceedings to enforce only injunctions "granted upon hearing, after notice to the defendant").[8] And finally, it does not protect "the substantive relief sought by [the plaintiff] in more than [temporary] fashion." *Orange County,* 52 F.3d at 825.

Numerous courts have explained this last prong in greater detail. *See, e.g., Henrietta D. v. Giuliani,* 246 F.3d 176, 182 (2d Cir.2001) ("To qualify as an 'injunction' under § 1292(a)(1), a district court order must grant at least part of the ultimate, coercive relief sought by the moving party."); *Santana Prods., Inc. v. Compression Polymers, Inc.,* 8 F.3d 152, 154 (3d Cir.1993) ("[T]o be injunctive for purposes of section 1292, the order must grant or deny a party the ultimate relief sought by it."). The words of Judge Friendly are particularly illuminating:

> We think it better ... to continue to read § 1292(a)(1) as relating to injunctions which give or aid in giving some or all of the substantive relief sought by a complaint ... and not as including restraints or directions in orders concerning the conduct of the parties or their

**7.** We express no view as to whether these necessary characteristics are sufficient to define an appealable injunction. *See Calderon v. United States Dist. Court,* 137 F.3d 1420, 1422 n. 2 (9th Cir.1998) (commenting that for an order "not explicitly labeled an injunction, it is arguable that the requirements of *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), ... [must be]

satisfied before an immediate appeal ... [can be] taken").

**8.** It is, of course, only logical that contempt is unavailable against the party against whom a seizure order is issued without notice because the order does not direct the party to either take or refrain from any action.

counsel, unrelated to the substantive issues in the action, while awaiting trial .... [S]uch a construction provides a better fit with the language of the statute ... and with the policy considerations which led Congress to create this exception to the federal final judgment rule.

*Int'l Prods. Corp. v. Koons,* 325 F.2d 403, 406–07 (2d Cir.1963).

The purpose of the seizure order is to preserve the evidence necessary to bring trademark counterfeiters to justice. 130 Cong. Rec. H12,080 ("The ex parte seizure order is intended to thwart th[e] bad faith tactic" of "destroy[ing] or transfer[ring] counterfeit merchandise when a day in court is on the horizon."). It is thus more like an order "concerning the conduct of the parties ... while awaiting trial" than one giving any "of the substantive relief sought by a complaint." *Int'l Prods. Corp.,* 325 F.2d at 406. Indeed, common sense reveals that the seizure order does not afford any party substantive relief to which it may be entitled under law. The plaintiff "has no proprietary interest in" the seized goods. H.R.Rep. No. 98–997, at 16. The court's possession of the goods no more vindicates the plaintiff's trademark rights than would the counterfeiter's own "bad faith tactic" of destruction; both actions keep the defective goods off the market. Nor does the court's possession give rise to any judicial prohibition on further counterfeiting. The plaintiff has no legal interest in having the court possess the defendant's property; seizure simply protects the integrity of the evidence in pending civil action.

At best, the procedural attributes of the order are more akin to those of a temporary restraining order, not an injunction. But, even the imperfection of that analog underscores the difference between an ex parte seizure order and injunctive relief. For example, both operate within strict temporal limits and require a showing of "immediate and irreparable injury." *Compare* 15 U.S.C. § 1116(d)(4)(B)(i), (iv) *and* § 1116(d)(10) *with* Fed.R.Civ.P. 65(b). Importantly, however, a temporary restraining order is not classified as an injunction; nor, under long-standing precedent, is it generally subject to appeal. *See Religious Tech. Ctr.,* 869 F.2d at 1308. Thus, even characterizing the seizure order as a variation on a temporary restraining order would not bring it within the appealability provisions of § 1292(a)(1).[9]

Accordingly, we hold that the ex parte seizure order authorized by 15 U.S.C. § 1116(d) is not an injunction, and that denial of the order is therefore not automatically appealable under 28 U.S.C. § 1292(a)(1).

## D. "PRACTICAL EFFECT" DOCTRINE

Deciding that the district court's order did not literally refuse an injunction does not end our jurisdictional inquiry. A practical construction of § 1292(a)(1) is appropriate in the limited circumstances where the "interlocutory order of the district court might have a serious, perhaps irreparable, consequence," and it can be "effectually challenged only by immediate appeal." *Carson,* 450 U.S. at 83–84, 101

---

9. Curiously, the Third Circuit's analysis depends on whether the order is granted or denied. It likens the grant of an ex parte order to a grant of a temporary restraining order, which is not appealable. In contrast, it views the denial of a seizure order as a matter that would escape review prior to final judgment and thus an issue that should be subject to immediate appeal. *Vuitton,* 945 F.2d at 573–74. Although this approach may have surface appeal, as we discuss in the next section, its logic would seriously undermine both the final order and the narrow exception for injunction appeals.

S.Ct. 993 (internal quotation marks omitted). Applying this test, we look to the facts of Lorillard's case to determine if "1) the order has the practical effect of entering or refusing to enter an injunction; 2) the order has 'serious, perhaps irreparable consequences'; and 3) immediate appeal is the only way to challenge the order." *Or. Natural Res. Council, Inc. v. Kantor*, 99 F.3d 334, 337 (9th Cir.1996). Lorillard has not shown that its claim satisfies any aspect of the *Carson* test. As a consequence, § 1292(a)(1) does not allow us to exercise appellate jurisdiction.

Although we recognize the value and importance of ex parte orders in preserving evidence and we acknowledge that trademark holders view the potential destruction of evidence as irreparable, the reality is that denial of an ex parte seizure order is not tantamount to refusing to enter an injunction. Indeed, in the face of a denial of an ex parte seizure order, the applicant may still proceed with a temporary restraining order with notice and/or a request for preliminary injunction. (Here, in fact, Lorillard filed a combined motion for ex parte seizure and temporary restraining order.) The trademark holder is not forced to proceed empty handed and without any infringing goods, as presumably it had sufficient evidence to advance in good faith its initial ex parte application.

As a practical matter, the trademark plaintiff is more likely to secure preservation of the evidence by proceeding with immediate options before the district court rather than awaiting the lengthy appeal process involving docketing, briefing, argument, and the issuance of an opinion from a circuit court. Before this case reached the appellate level, the district court expressed concern with the timeliness of the application because four weeks had already passed since the cigarettes were purchased. By the time we heard argument, even with an expedited appeal, the evidence was almost seven months old.

In undertaking this jurisdictional analysis, we observe that our result accords with strong policy concerns in favor of respecting the "integrity of the congressional policy against piecemeal appeals." *Switzerland Cheese Ass'n. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966). Indeed, the denial of a motion for an ex parte seizure order raises the very spectre the final judgment rule seeks to eliminate. Appeals of such denials occur so early in a case that they are likely to come with an anemic record, as in this case. Because the nature of the ex parte motion is to catch the defendant by surprise, only the plaintiff will have had the opportunity to present its side of the case. These circumstances add up to ensure a one-sided and ill-developed record before the appellate court.[10] Without a full record and without the benefit of an adversarial proceeding, the appellate court would be in a particularly poor position to pass on the propriety of the district court's exercise of discretion. Thus, it is particularly true in this context that applying a loose construction of § 1292(a)(1) only "encourages unsuccessful assertions of jurisdiction, wasting precious appellate resources, burdening adverse parties, and perhaps diverting effort from expeditious continuation of trial court proceedings." 16 *Federal Practice and Procedure* § 3922.1, at 94.

10. It has been suggested that ex parte seizure orders may be susceptible to abuse by plaintiffs because "a judge, when deciding a request for an ex parte seizure order, is largely limited to the evidence put forth by the plaintiffs." Michael L. Petrucci, Casenote, *Trademark Law: Vuitton v. White and the Ex Parte Seizure Order in Trademark Counterfeit Litigation: The Trend Must End*, 18 U. Dayton L.Rev. 217, 231–32 & n. 136 (1992).

Because the purpose of the seizure order is to ensure that certain evidence makes it to trial, it is wise to regard with caution the potential intrusion into the heart of the district court judge's traditional domain. To suggest that it is somehow unfair to deny the ex parte seizure motion without the benefit of immediate review impugns the role of the district court. The § 1116(d) order is an extraordinary mechanism for pre-notice seizure of allegedly infringing goods. The statute sets out specific standards. If the applicant cannot meet those standards, immediate seizure is foreclosed but the ultimate remedy is preserved. We do not take lightly the concern that evidence may evaporate upon notice to a party. But notice is the norm in our courts. The district court has other vehicles available to address disappearing evidence, including sanctions for spoliation of evidence.[11] In our view, it is better here to refrain from interfering with the "district judge's orders advancing a case to trial ... by the cumbersome method of appeal before he has approached the stage of adjudication." *Switzerland Cheese*, 385 U.S. at 25 n. 3, 87 S.Ct. 193.

Accordingly, the appeal is DISMISSED for lack of jurisdiction.

CALLAHAN, Circuit Judge, dissenting:

Convinced that this court has jurisdiction to hear Lorillard's appeal, I respectfully dissent. With that said, the district court did not abuse its discretion or clearly err in denying Lorillard's motion for an ex parte seizure order. Therefore, I would affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

Before 1984, peddlers of counterfeit merchandise were nearly immune to the then-conventional civil remedies available to victims of trademark infringement; indeed,"[t]he pirate ... who [was] served with a civil summons to appear at a hearing on a preliminary injunction [would] either disappear or quickly dispose of existing inventory." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:10, at 25–19 (4th ed. 2003) ("McCarthy"). Recognizing this problem, Congress passed special legislation in 1984, now codified at 15 U.S.C. § 1116(d), enabling judges to grant ex parte seizure orders to confiscate counterfeit goods without first providing notice to the purported bootlegger. 5 McCarthy, §§ 30:34—30:36, at 30–70 to 30–77.

Lorillard moved for just such an order to seize packages of cigarettes from Doe that allegedly bear a phony Newport trademark. In support of its motion, Lorillard presented the sworn declaration of

---

11. We express no opinion on other potential remedies Lorillard may have had at its disposal, such as a writ of mandamus, which Lorillard did not request of us. *See Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 998 (9th Cir.2003) (mandamus is "an extraordinary remedy that may be obtained only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so") (internal quotation marks omitted). The dissent's suggestion that we opt for holding that jurisdiction exists because we would have to reach the merits on mandamus is an odd one indeed. Jurisdiction is a matter of statutory authorization; we cannot create jurisdiction where there is none. Moreover, simply because we may treat "a notice of appeal from an otherwise unappealable order ... as a mandamus petition" does not mean we must. *Id.* Nor does it mean that we should collapse the concepts of appellate jurisdiction under 28 U.S.C. § 1291 and mandamus jurisdiction under 28 U.S.C. § 1651.

1. Whereas the majority opinion does not reach the merits of the appeal, I must conduct an independent analysis, including a thorough review of the background and procedural history.

Curtis Hill, a regional sales manager who had been employed by the company for fifteen years. Having worked closely with Lorillard's quality assurance programs, Hill stated that he had specialized knowledge of his employer's packaging. He also attested that he had examined two packages of Newport cigarettes contained in cartons purchased from Doe and, based on certain measurements and other packaging traits,[2] concluded that these packages were counterfeit.

The district court found Hill's declaration inadequate for purposes of supporting an ex parte seizure order, and issued a written order stating:

> Although Hill's observations may be indicative of counterfeit products, they are not sufficient to satisfy the Court that the subject cigarettes are counterfeit. It does not appear that there has been any expert analysis conducted by anyone who is well qualified in packaging or quality control nor does it appear there has been any analysis performed upon the actual cigarettes that were contained within the three cartons acquired from the Defendant's establishment. Given the nature of the extraordinary relief being requested from the Court, some greater expert opinion and analysis than the visual inspection of two packs of cigarettes by a sales manager will need to be presented.

Rather than deny Lorillard's motion outright, however, the district court granted leave to supplement the evidence. One week later, Lorillard responded by submitting the declaration of Tom Moring, one of the company's vice presidents who had been employed there for thirty-three years. Moring explained in his declaration that he had directed quality management and packaging for many years, and that he possessed "substantial knowledge of Lorillard's products, including the packaging." Like Hill, Moring elaborated that he had inspected two packages of Newport cigarettes obtained from Doe, and he had noted the same discrepancies in measurements and other packaging traits. Moring added that "it would be virtually impossible for anyone to smuggle genuine Newport cigarettes out of the manufacturing plant."

Seemingly unimpressed by Lorillard's supplemental showing, the district court found:

> The only real difference from the evidence which was earlier presented is the qualifications of the company official who inspected the two packages of cigarettes. There has still been nothing more than a visual inspection of two cigarette packs and there has been no inspection of the contents of any of the cigarette packs or cartons. It appears that there is a significant amount of evidence that has not been inspected which would include: the cigarettes themselves, including but not limited to, the tobacco within the cigarettes, the wrapping on the cigarettes, the filters of the cigarettes and any other packaging materials which would normally be found within a cigarette pack.

The district court went on to elaborate that Lorillard, despite having "the resources to conduct the kind of analysis that would reasonably establish that the cigarettes in question are counterfeit," had made "only a superficial showing." Ulti-

---

**2.** Hill's declaration provided a more detailed account of the measurements and packaging traits, as did other papers filed by Lorillard in support of its motion, but these materials were filed under seal. Accordingly, the spe- cifics are not divulged here. To do otherwise may prejudice Lorillard's case by suggesting methods by which alleged counterfeiters could improve their efforts to elude detection or thwart prosecution.

mately, the district court denied Lorillard's application for an ex parte seizure order and Lorillard timely filed a notice of appeal.

## II. DISCUSSION

Following the Third Circuit's reasoning in *Vuitton v. White*, 945 F.2d 569, 571 (3d Cir.1991) (hereinafter, *"Vuitton"*), this court would have appellate jurisdiction to reach the merits of Lorillard's appeal. Nevertheless, for reasons explained below, Lorillard has failed to demonstrate that the district court abused its discretion or based its decision on a clear error of law. *See id.* at 574.

## A. APPELLATE JURISDICTION IS NOT LACKING

Concluding that this court lacks jurisdiction to review the denial of a request for an ex parte seizure order, the majority opinion accurately describes distinctions between familiar trees but fails to perceive the forest. I agree with the majority "that Congress intended to create something sui generis ... when it enacted 15 U.S.C. § 1116(d)." Speaking metaphorically, however, the majority's examination focuses too much on the degree to which the leafs on ex parte seizure orders differ from the foliage found on injunctions. *See, e.g., Sims v. Greene*, 160 F.2d 512, 517 (3d Cir.1947) (disregarding terminology and treating temporary restraining order as a preliminary injunction for purposes of securing appellate jurisdiction).

The majority's analysis also overlooks whether the forest's ecological well-being is served by preventing certain trees from growing toward the sun of appellate review. Specifically, the opinion loses sight of pertinent factors indicating Congressional intent to permit immediate appeals in these instances, and it discounts too drastically the substantial impact that stems from being deprived of the relief afforded by 15 U.S.C. § 1116(d). *See* 5 McCarthy, § 30:36, at 30–77 (quoting from Senate–House Joint Explanatory Statement on Trademark Counterfeiting Legislation). Additionally, the majority opinion overestimates the quantity of appellate resources that will be conserved by its holding.

## 1. CONGRESS PRESUMABLY INTENDED A DIRECT APPEAL

As noted by the majority, the Third Circuit has held that the denial of a motion for relief under 15 U.S.C. § 1116(d) is a decision that is immediately appealable per 28 U.S.C. § 1292(a)(1). *Vuitton*, 945 F.2d at 571–74. The Sixth Circuit subsequently reached basically the same conclusion. *First Tech. Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir.1993) (hereinafter, *"Depinet"*).

Dwelling on certain technical differences between injunctions and ex parte seizure orders, the majority does not find the reasoning of the Third and Sixth Circuits persuasive. On this point we disagree. The Third Circuit rationally surmised that denying a motion for an ex parte seizure order is akin, albeit not identical, to refusing to grant an injunction, and the Sixth Circuit correctly followed that holding. It is true that the denial of a motion for an ex parte seizure order differs in some ways from the denial of a traditional injunction, but the result is just as much a definitive defeat to the moving party.

Beyond whatever opinions circuit judges may hold about the similarities between injunctive relief and that afforded by 15 U.S.C. § 1116(d), the paramount consideration here is Congressional intent. *See, e.g., Price v. PSA, Inc.*, 829 F.2d 871, 874 (9th Cir.1987) ("Such appeals are appropriate because Congress did not intend to preclude review...."). There is a suffi-

cient basis to find that Congress meant to allow a direct appeal from the denial of a motion for an ex parte seizure order, even if it did not precisely label 15 U.S.C. § 1116(d) as injunctive relief.

Since our sister circuits published their respective decisions in *Vuitton* and *Depinet*, Congress has twice amended 15 U.S.C. § 1116(d) in ways that did not alter the holding of those opinions. *See* Pub.L. No. 105–225, § 5(b), 112 Stat. 1499 (Aug. 12, 1998); Pub.L. 107–273, § 13207(b), 116 Stat.1908 (Nov. 2, 2002). Likewise, in 1992, Congress amended 28 U.S.C. § 1292 to enlarge, rather than reduce, the list of non-final decisions that could be appealed—and it did so without questioning *Vuitton's* analysis or determination. *See* H.R.Rep. No. 102–1006, pt. 1 at p. 18 (Oct. 3, 1992) (stating that the purpose of the amendment was "to expand the appealability of interlocutory determinations"). Consequently, we may presume that Congress was aware of and intended to adopt the *Vuitton* court's interpretation. *See Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 782–83 and n. 15, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (discussing presumptions of Congressional intent in finding jurisdiction); *Palila v. Hawaii Dep't. of Land & Natural Res.*, 852 F.2d 1106, 1109 n. 6 (9th Cir.1988) (same).

## 2. THE COLLATERAL ORDER DOCTRINE AND THE DEATH KNELL DOCTRINE SUPPORT A DIRECT APPEAL IN THIS CASE

Despite the Third Circuit's conclusion, without analysis or explanation, that refusing to grant an ex parte seizure order is not a final order, *see Vuitton*, 945 F.2d at 571, reasonable arguments can be made that such decisions are appealable under 28 U.S.C. § 1291. For example, according to the collateral order doctrine, some decisions that do not terminate the litigation are nonetheless directly appealable as final orders—if they are conclusive, resolve important questions separate from the merits, and cannot be reviewed effectively from the final judgment. *See Cunningham v. Hamilton County*, 527 U.S. 198, 204, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999).

The district court's decision to deny Lorillard relief under 15 U.S.C. § 1116(d) is conclusive insofar as it chops down Lorillard's ability to seize the allegedly counterfeit goods. *See Matter of Vuitton et Fils, S.A.*, 606 F.2d 1, 2 and 5 (2d Cir.1979) (describing how notice to counterfeiters frustrates the processes of justice).[3] The denial of an otherwise appropriate ex parte seizure order is a vital question separate from the merits[4] because, absent such an order, the merits of the case are not likely

---

**3.** While ordering the seizure of property is a somewhat drastic step, especially when no prior notice is given to the party from whom the property is confiscated, there are built-in protections to curb abuse and remedy the harm when such actions turn out to be unjust. *See* 15 U.S.C. § 1116(d)(4)(A) (requiring parties seeking ex parte seizure orders to first post adequate security for the payment of any damages that may result from a wrongful seizure, be it merely attempted or actually executed).

**4.** Admittedly, there is overlap between the merits of a request for an ex parte seizure order and the merits of an overall action for trademark infringement; to wit, both processes weigh the likelihood of the goods or packaging in question being counterfeit. But whether relief under 15 U.S.C. § 1116(d) is warranted is less like ultimately determining whether infringement has occurred, and more like deciding whether a party is entitled to proceed in the action without sacrificing some crucial right. *Cf. Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (holding that the denial of a motion to require the plaintiff to post a security bond before proceeding with litigation is appealable under the collateral order doctrine); *FDIC v. Ogden Corp.*, 202 F.3d 454, 459–60 (1st Cir.2000) (holding

to be reached at all. *See id.* By the same token, denying 15 U.S.C. § 1116(d) relief precludes effective review after a final judgment.

Moreover, by enacting 15 U.S.C. § 1116(d), Congress created a judicial remedy. The denial of Lorillard's motion effectively terminated its request for judicial relief and left Lorillard without any adequate recourse other than appellate review. To the extent that denying a motion for an ex parte seizure order puts the proverbial final-swing of the ax to an action for trademark infringement, such a decision should be appealable immediately under the death knell doctrine. *See* 19 James Wm. Moore et al., Moore's Federal Practice § 202.09, at 202–40.10 to 202–40.12 (3d ed.2003).

### 3. TREATING THE APPEAL AS A PETITION FOR A WRIT OF MANDAMUS

Another avenue toward finding jurisdiction would be to exercise our discretion, under 28 U.S.C. § 1651, to treat Lorillard's appeal as a petition for a writ of mandamus. *Cf. Cordoza v. Pacific States Steel Corp.*, 320 F.3d 989, 994 (9th Cir. 2003) (acknowledging but declining to exercise discretion). This path is permissible where a direct appeal is not available, a subsequent appeal would provide an inadequate remedy, and the district court's order is clearly erroneous. *Id.* at 998; *see also Matter of Vuitton et Fils, S.A.*, 606 F.2d at 4–5 (granting a mandamus petition and directing the equivalent of an ex parte seizure order to be issued in a trademark case).

As explained below, the district court did not commit a clear error in this case—so Lorillard would not have found more success taking the mandamus route. The point, however, is that deciding whether to issue a writ of mandamus in cases like this—where a direct appeal now is not available in this circuit, and the prospect of a subsequent appeal was never realistic—requires an evaluation of the merits. Ergo, holding that jurisdiction does not exist under 28 U.S.C. §§ 1291 and 1292(a)(1) only forces plaintiffs like Lorillard to file mandamus petitions—which will require us to reach the merits in any event. Obviously, such an outcome will not preserve our valuable appellate resources.[5]

In sum, while *granting* a request for an ex parte seizure order may not provide substantive relief to the parties, the majority underestimates the gravity of *denying* such a request—which is tantamount to clear-cutting the prospect of ever obtaining any relief. A secondary but still significant consideration is the reality that, by declining to review these matters via regular appellate processes, our appellate resources will not be spared but consumed analyzing the merits of petitions for writs of mandamus. Hence, the better approach is to hold that appellate jurisdiction exists to reach the merits of this appeal.

### B. THE DISTRICT COURT DID NOT ERR OR ABUSE ITS DISCRETION

Generally, the Ninth Circuit reviews a district court's order on a preliminary in-

---

that the collateral order doctrine allows direct appeal from a discovery order compelling production of allegedly privileged materials).

**5.** This is not to imply that we could find appellate jurisdiction under 28 U.S.C. §§ 1291 or 1292(a)(1) wherever it is possible to challenge a district court's decision in a

petition for a writ of mandamus, nor do I suggest that we treat Lorillard's appeal as a mandamus petition. On the contrary, I merely note that the majority's holding undermines its stated goal of conserving appellate resources.

junction for abuse of discretion, unless it is alleged that the order rests on a faulty legal premise, in which case de novo review is warranted. *Rucker v. Davis*, 237 F.3d 1113, 1118 (9th Cir.2001) (en banc), *rev'd on other grounds, Dep't of Hous. and Urban Dev. v. Rucker*, 535 U.S. 125, 130, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002). That standard should also apply to the review of denials of ex parte seizure orders. *See Vuitton*, 945 F.2d at 574. Here, de novo review is triggered by Lorillard's claim that the district court interpreted the applicable law in a clearly erroneous fashion.

As Lorillard sees it, the district court refused to grant an ex parte seizure order because there was no evidence that the cigarettes themselves were imitations, regardless of whether the packages in which they came were inauthentic. If Lorillard's construction of the district court's rationale were sound, denial of the motion would have been based on a clear legal error. *See Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085–86 (9th Cir.1998) (noting that repackaged goods must clearly reveal the repackaging on the label in order to use manufacturer's trademark legitimately). The district court, however, did not proclaim that expert opinion was necessary or that evidence was required to show that the cigarettes themselves were counterfeit.

Rather, the district court merely found that declarations from two individuals who visually inspected the exterior materials of only two packs of cigarettes were insufficient to warrant the extraordinary relief contemplated by 15 U.S.C. § 1116(d). The district court's language denying Lorillard's motion simply suggests other possible indications of counterfeiting that could have been analyzed and offered to cure the shortcoming; i.e., "expert analysis conducted by[someone] well qualified in pack-

aging or quality control," or "the contents of any of the cigarette ... cartons," or "the cigarettes themselves," or "any other packaging materials which would normally be found within a cigarette pack."

In that the district court reached its decision based on the weight of the evidence, there was no abuse of discretion, never mind a clearly erroneous interpretation of the applicable law. *See Cordoza*, 320 F.3d at 998 (explaining that clear error is something more than an abuse of discretion).

## III. CONCLUSION

For the foregoing reasons, I respectfully disagree with the majority that we lack jurisdiction to hear this appeal, and I would reach the merits. In so doing, I would find no abuse of discretion or clear error and, thus, would affirm the district court's order denying Lorillard's motion.