Louis VUITTON, Appellant,

v.

Helene WHITE, d/b/a City Look Fashions, Florence "Doe".

Louis VUITTON, Appellant,

v.

Young LEE; Kim Yeon Soo, a/k/a Young Soo Kim; Young Hi Kim, David Lee, and Various "John Does" and "Jane Does".

Nos. 90–1956, 90–1957.

United States Court of Appeals, Third Circuit.

Argued May 21, 1991.

Decided Sept. 18, 1991.

Robert P. Devlin (argued), Reboul, Mac-Murray, Hewitt, Maynard & Kristol, New York City, for appellant.

Before STAPLETON, SCIRICA and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

In these consolidated cases, we must decide an issue of first impression: is an order denying an application under 15 U.S.C. § 1116(d) for an ex parte seizure order appealable? We hold that such an order constitutes a denial of a form of injunction and is immediately appealable pursuant to 28 U.S.C. § 1292(a)(1). We also conclude that the district court's refusal to grant a seizure order in this case was an abuse of discretion.

## I.

Louis Vuitton, through affiliated companies, makes and sells high quality luggage, handbags, and related items. Its merchandise has been advertised and distributed throughout the United States for over fifty years, and it holds trademarks not only in its name, but also in distinctive arrangements of its initials. The value of Vuitton's reputation and trademark has been recognized and misappropriated by others. Vuitton claims that it has begun over a thousand cases for counterfeiting and related frauds in the last fifteen years.

Vuitton has had a problem with counterfeiting in Philadelphia since at least 1983. In October 1989, Vuitton filed a counterfeiting action in the Eastern District of Pennsylvania against several street vendors, many of whom openly admitted that their merchandise was not authentic. At the beginning of that case, Vuitton made an ex parte request for a seizure order pursuant to 15 U.S.C. § 1116(d) and for a temporary restraining order; the district court granted only a portion of the temporary restraining order relief sought and denied the seizure order. Only one defendant appeared in response to the order to show cause for the preliminary injunction, which was granted without opposition. None of the defendants responded to further notice; permanent injunctive relief was entered by default on February 20, 1990.

Vuitton observed that counterfeiting activity on the streets of Philadelphia declined for only a few months after the first action. Therefore, it commenced these two actions on November 13, 1990. The *Lee* action was brought against street vendors, at least four of whom had been served with the injunctive order in the first action, and the *White* action was brought against a wholesaler and her salesperson. As related actions, both cases were assigned to the district judge who had heard the first action.

Again, Vuitton moved ex parte in each case for a temporary restraining order and a seizure order. In both cases, the district court granted the temporary restraining order, denied the seizure order, and set a date for the preliminary injunction hearing. Working from a form of order apparently supplied by Vuitton, the district court in both cases found that Vuitton met all the criteria for issuance of an ex parte seizure order, except that the court crossed out the finding that "the entry of any order other than an ex parte seizure order will not serve to adequately achieve the objectives underlying the Trademark Counterfeiting Act of 1984[.]" App. at 196, 204.

Once Vuitton learned that it had been denied the seizure order, it decided not to pursue the case further in the district court. It asked the district court to cancel the preliminary injunction hearing, so that defendants would not be served and it could attempt to pursue an ex parte appeal. In its order canceling the hearing, the dis-

trict court gave a brief explanation for its refusal to issue the requested seizure orders:

> Plaintiff failed to demonstrate at the conference with the court on November 13th, 1990 that an order other than an ex parte seizure order is not adequate to achieve the purposes of section 32 of the Lanham Act. Nor did plaintiff demonstrate an immediate and irreparable injury will occur if such seizure is not ordered. The Court's judgment is not to subject U.S. Marshals to the risks of making a seizure on the streets where plaintiff has access to the awesome other powers of the Court, including its injunctive and contempt authority to protect the trademarks.

App. at 212–13.

Vuitton filed timely notices of appeal and attempted to serve defendants with its brief and appendix after its requests to appeal ex parte were denied by this court.[1] Its motion to consolidate the two cases for appeal was granted.

## II.

■ At the threshold, we must determine whether this court has appellate jurisdiction to review the district court's denial of an application for a 15 U.S.C. § 1116(d) seizure order. Ordinarily, we review only final orders of the district court, which this clearly is not. However, 28 U.S.C. § 1292(a)(1) authorizes immediate appellate review of district court orders "granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions", and Vuitton claims that because a § 1116(d) seizure order is a type of injunction, § 1292(a)(1) applies. We agree.[2]

### A.

Consistent with their calling, professional counterfeiters and dealers in counterfeit goods generally are not upstanding citizens. This presents a major obstacle to trademark owners trying to protect their marks. As one commentator has described the situation,

> Experience in hundreds of cases has shown that it is extremely likely that a counterfeiter, upon being apprised of the institution of a lawsuit by the trademark owner, will conceal his infringing merchandise and either destroy or conceal all records relating to this merchandise, thereby frustrating implementation of the trademark owner's statutory and common law rights.

Bainton, *Seizure Orders: An Innovative Judicial Response to the Realities of Trademark Counterfeiting*, 73 Trademark Rep. 459, 464 (1983).

Courts initially responded to these bad faith tactics by granting ex parte interim relief. The classic precedent for courts' authority to do so is *In re Vuitton et Fils S.A.*, 606 F.2d 1 (2d Cir.1979). In that case, the Court of Appeals for the Second Circuit granted Vuitton's application for a writ of mandamus directing the district court to enter an ex parte temporary restraining order. It found the district court's reluctance to enter the order without notice unjustified:

> Vuitton has demonstrated sufficiently why notice should not be required in a case such as this one. If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action. This is precisely contrary to the normal and intended role of "notice" ...

606 F.2d at 4–5. Using the *Vuitton* case as authority, other courts began issuing—

---

**1.** Now that notice has been given, a seizure order cannot be granted ex parte and may well be ineffective. Nevertheless, we agree with Vuitton that while this case might otherwise be moot, it falls within the exception from the mootness doctrine for cases "capable of repetition, yet evading review." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975).

**2.** Vuitton asks, in the alternative, that if we find ourselves without appellate jurisdiction, we treat its notices of appeal as petitions for mandamus. Because we have jurisdiction pursuant to § 1292(a)(1), that request is denied. *Bailey v. Systems Innovation, Inc.*, 852 F.2d 93, 95–96 (3d Cir.1988).

not just temporary restraining orders, which are frequently ignored—but seizure orders providing for the seizure of the counterfeit merchandise and related business records by the U.S. marshals or plaintiff's agent. *See e.g. Fimab–Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Kitchen,* 548 F.Supp. 248 (S.D.Fla.1982).

However, not all courts were persuaded of their authority to enter seizure orders even when they were persuaded that a plaintiff would be denied effective relief in the absence of such an order. At the same time, counterfeiting operations continued to grow and to become increasingly sophisticated. After substantial study, Congress responded to these problems with the Trademark Counterfeiting Act of 1984. That act provided criminal penalties for counterfeiting, mandatory triple damages, and specific authorization for injunctive relief, including ex parte seizure orders.

The relevant section, 15 U.S.C. § 1116(d), provides in part that:

(a) Jurisdiction; service

The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark

. . .

\*     \*     \*     \*     \*     \*

(d) Civil actions arising out of use of counterfeit mark

(1)(A) In the case of a civil action [for counterfeiting] the court may, upon ex parte application, grant an order under subsection (a) of this section pursuant to this subsection providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation.

Further provisions of subsection (d) detail the procedures for applying for a seizure order, what facts must be shown to obtain an order, and what the order must contain. Section 1116(d)(10) provides that a hearing with notice to the defendant must be held no later than fifteen days after the order is issued at which the applicant "shall have the burden of proving that the facts supporting [the seizure] order are still in effect."

### B.

Because our appellate jurisdiction is created and circumscribed by statute, Congressional intent determines whether a particular kind of order falls within that jurisdiction. Construing § 1116(d) and 28 U.S.C. § 1292(a)(1) together, we conclude that Congress contemplated that orders granting or denying § 1116(d) seizure orders would be appealable.

Section 1292(a)(1) provides that we have jurisdiction over appeals from orders granting or denying injunctions. Section 1116 is entitled "Injunctive relief." Subsection 1116(d) states that "the court may, upon ex parte application, grant [a seizure] order under subsection (a) of this section", and subsection 1116(a), in turn, states that the courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable[.]" The words chosen indicate to us that Congress viewed § 1116(d) seizure orders as a form of injunctive relief.

The legislative history supports the conclusion that § 1116(d) seizure orders were viewed as a form of injunction, rather than as an attachment or other form of provisional legal remedy, the only other plausible classification. Attachments are available under Rule 64 of the Federal Rules of Civil Procedure and are a legal remedy; injunctions are available under Rule 65 and are an equitable remedy. Both the testimony before the various congressional committees and the eventual committee reports assume that seizure orders are injunctions. For example:

The procedures detailed in this section are largely derived from the existing requirements of rule 65 of the Federal Rules of Civil Procedure. Those requirements have been modified in certain respects to conform them to the circumstances peculiar to seizures on an ex

parte basis. Except where the provisions of rule 65 are inconsistent with the requirements of this act, however, they will continue to apply, as will traditional principles of equity.

Joint Statement on Trademark Counterfeiting Legislation, 130 Cong.Rec. H12076, H12080, (1984) ("Joint Statement") *reprinted in* Gilson, 4 *Trademark Protection and Practice*, § 34 ("Gilson") 34–613, 34–622. *See also* H.R. 997, 98th Cong., 2d Sess., 19, (1984), *reprinted in* Gilson, 34–568, 34–586. These references to Rule 65 and equity would be inappropriate if Congress believed it was creating a form of legal remedy, such as an attachment.[3]

Our conclusion that Congress viewed § 1116(d) seizure orders as a form of injunction does not end our jurisdictional inquiry. Temporary restraining orders are a form of injunction and proceedings concerning them are governed by Rule 65. *Sims v. Greene,* 160 F.2d 512 (3d Cir.1947) (restraining order continued beyond ten day limit "becomes a preliminary injunction"). Nevertheless, orders granting or denying temporary restraining orders, unlike orders granting or denying preliminary injunctions, have been found not to be appealable under § 1292(a)(1). Accordingly, we must inquire whether orders granting or denying § 1116(d) seizure orders are more like orders resolving applications for temporary restraining orders or orders resolving applications for preliminary injunctions.

When a district court issues a temporary restraining order, that order expires within ten days. Moreover, whether the court grants or denies a temporary restraining order, the plaintiff can apply for a preliminary injunction and receive prompt reconsideration of the propriety of interim relief. When the application for a preliminary injunction has been resolved, the losing party has a right to an immediate appeal. Thus, whether an application for a temporary restraining order is granted or denied, the effect of the order is extremely short lived and prompt appellate review is available. This explains why such orders have been found not to be appealable under § 1292(a)(1):

> [t]he rationale for concluding that temporary restraining orders do not fall within the interlocutory appeals statute is that they are of short duration and terminate with the ruling on the preliminary injunction so that an immediate appeal is not necessary to protect the rights of the parties.

11 Wright & Miller *Federal Practice and Procedure* § 2962 at 618 (1973 & Supp. 1991).

Under the procedure specified in § 1116(d), a district court that issues an ex parte seizure order must schedule a hearing, on notice to the defendant, no sooner than ten days and no later than fifteen days after the date the seizure order is issued. Thus, just as in the case of the grant of a temporary restraining order, the ex parte grant of a seizure order is reviewed promptly by the issuing court. When that review has been conducted and a new order has been entered either continuing, dissolving, or modifying the seizure order, we believe that the new order is, in all respects, like an order continuing, dissolving, or modifying a preliminary injunction and that Congress intended that new order to be immediately appealable under § 1292(a)(1). We, therefore, conclude that a grant of an ex parte seizure order—like a temporary restraining order—is short lived, subject to prompt reconsideration by the district court, and not immediately appealable.

In contrast, the denial of an ex parte seizure order is not comparable to the denial of a temporary restraining order. Section 1116(d) makes no provisions for a proceeding in which the district court will promptly review its decision not to direct a seizure of the defendants' merchandise and

---

**3.** The House Report also observes that "A seizure is not the same as an injunction ...", H.R.Rep. 997, 98th Cong., 2d Sess. 15 (1984), *reprinted in* Gilson at 34–582, but that comment was made in the context of explaining why due process requires more protection when a defendant's property is seized, than when a defendant is merely ordered to maintain the status quo. Accordingly, we do not view that isolated comment as inconsistent with our conclusion that a seizure is an injunction for § 1292(a)(1) purposes.

574

records *pendente lite;* there is no § 1116(d) equivalent of an application for a preliminary injunction. Where, as here, the judge indicated no intent to revisit the issue of the propriety of such interim relief, the court's denial of the plaintiff's ex parte application under § 1116 is the final resolution of that issue. If the plaintiff can not secure appellate review at this point in the proceedings, it will be unable to secure such review prior to final judgment. We conclude that Congress did not intend such a result and that the district court's order denying Vuitton's § 1116(d) application was the equivalent of an order denying an application for a preliminary injunction.

### C.

One further jurisdictional inquiry remains. Under this court's recent decision in *Ross v. Zavarella,* 916 F.2d 898, 902 (3d Cir.1990), even orders concerning injunctions, that are clearly covered by § 1292(a)(1), must meet the requirements set forth in *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981):

> [u]nless a litigant can show that an interlocutory order of the district court might have "a serious, perhaps irreparable, consequence," and that the order can be "effectively challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.

*Id.* 450 U.S. at 84, 101 S.Ct. at 996–97.

We conclude that any denial of a § 1116 seizure order satisfies both prongs of *Car-*

son.[4] First, such a denial might have "a serious, perhaps irreparable consequence", because if Vuitton has correctly characterized the alleged counterfeiters, they will disappear and evade legal process, only to rise again in a different guise or place. Second, the applicant has no means other than immediate direct appeal of "effectively challeng[ing]" the denial, because even if the applicant pursues his case in district court and later appeals the denial of the § 1116(d) order as part of an appeal from the final judgment, the merchandise and evidence which was to be seized will long since have disappeared.

Accordingly, we hold that the district court's denial of Vuitton's application is an appealable order.

### III.

■ Having established our jurisdiction, we turn to the merits of Vuitton's appeal. We review a district court's ruling on a preliminary injunction only to determine if there has been (1) an abuse of discretion, (2) an error of law, or (3) a clear mistake of fact. *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 198 (3d Cir.1990). The same standard of review is appropriate here.

In denying Vuitton's application for a seizure order, the district court entered factual findings that satisfied all of the conditions for granting a seizure order[5] except a finding that "an order other than an ex

---

**4.** The only other court of appeals to have considered whether it had appellate jurisdiction over an order ruling on a seizure application under § 1116(d) did not reach the question because it concluded that an order granting a seizure order would not satisfy *Carson. See General Motors Corp. v. Gibson Chemical & Oil,* 786 F.2d 105, 108 (2d Cir.1986).

**5.** § 1116(d)(4)(B) states that
[t]he court shall not grant [a seizure application] unless—the court finds that it clearly appears from specific facts that—
(i) an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title;
(ii) the applicant has not publicized the requested seizure;

(iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;
(iv) an immediate and irreparable injury will occur if such seizure is not ordered;
(v) the matter to be seized will be located at the place identified in the application;
(vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and
(vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to

parte seizure order is not adequate to achieve the purpose of [the Lanham Act]" App. at 204–05. In its subsequent order, the district court reiterated its finding that orders other than an ex parte seizure order would provide plaintiff with adequate relief, reversed its finding that Vuitton would suffer irreparable injury in the absence of a seizure order, and noted its reluctance to employ the U.S. marshals. Vuitton correctly claims that these orders cannot be reconciled with the district court's own factual findings and a proper interpretation of the statute.

■ The district court found both that Vuitton was likely to succeed in showing that defendants were using a counterfeit mark and that defendants were likely to destroy or hide the evidence if given notice of the proceedings. Those findings are supported by Vuitton's affidavits, by the defendants' failure to appear in Vuitton's first enforcement action despite actual notice, and by the fact that at least four of the street vendor defendants apparently are selling counterfeits in violation of the permanent injunction in that earlier action. In light of those findings, the district court's statements that orders other than an ex parte seizure order would be adequate to achieve the purposes of the Lanham Act can only be explained by the court's having misinterpreted the statute.

The legislative purpose behind § 1116(d) is clear from the Joint Statement of the congressional committees:

The purpose of the *ex parte* seizure provision is to provide victims of trademark counterfeiting with a means of ensuring that the courts are able to exercise their jurisdiction effectively in counterfeiting cases. Testimony before both the House and Senate Judiciary Committees established that many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon. The *ex parte* seizure procedure is intended to thwart this bad faith tactic, while ensuring ample procedural protections

the court, if the applicant were to proceed on

for persons against whom such orders are issued. In essence, both the Senate and House bills permitted issuance of an *ex parte* seizure order if the applicant could show that the defendant would not comply with a lesser court order, such as a temporary restraining order, and that there was no means of protecting the court's authority other than to seize the property in question on an *ex parte* basis.

Joint Statement, 130 Cong.Rec. at H12080, *reprinted in* Gilson at 34–622.

The legislative history thus indicates that Congress considered "ex parte seizures ... a necessary tool to thwart the bad faith efforts of fly by night defendants to evade the jurisdiction of the court", Joint Statement, 130 Cong.Rec. at H120781, *reprinted in* Gilson at 34–625, and intended seizure orders to be available whenever a temporary restraining order and the threat of contempt for a violation thereof are unlikely to result in preservation of the evidence and the removal of the counterfeit merchandise from commerce.

■ We recognize that § 1116(d) requires both a finding that notice will thwart effective relief *and* a finding that a temporary restraining order would be ineffective. Nevertheless, where, as in this case, the district court finds that notice will cause the defendants to conceal or destroy the counterfeit merchandise and the undisputed facts show that counterfeit merchandise is being sold despite an outstanding permanent injunction against some of the defendants, it is an abuse of discretion for the court to deny § 1116(d) relief without explaining how an ex parte restraining order can be expected to effectively alter the defendants' behavior. This record indicates that Vuitton faces precisely the problems that lead Congress to conclude that the traditional remedies of injunction and contempt were inadequate and to supplement them with the § 1116 seizure process. If we were to conclude that a § 1116 seizure order would be inappropriate in this case, we would be hard pressed to image a

notice to such person.

576

case in which such an order would be appropriate.

■. The second reason the district court advanced for not entering the seizure order was a finding that Vuitton would not suffer irreparable injury in the absence of an order. This finding that no irreparable injury was threatened either reflects the district court's mistaken belief that other orders can provide effective relief or is an error of law. Courts have held that both potential damage to reputation and likelihood of confusion constitute irreparable injury. *See e.g. Opticians Assn. v. Independent Opticians*, 920 F.2d 187, 195–96 (3d Cir.1990). Congress was clearly aware of these precedents when it required that seizure order applicants demonstrate a likelihood of irreparable injury:

> ["Immediate and irreparable injury"] will not ordinarily be a difficult showing in a counterfeit case.... The courts have repeatedly held that the distribution of infringing goods constitutes irreparable injury sufficient to order preliminary relief. [Citations] Since the marks at issue here are not merely infringing but counterfeit marks, this conclusion will be still more easily reached.

Joint Report, 130 Cong.Rec. at H12081, *reprinted in* Gilson at 34–624. Having found that defendants were likely to flaunt court orders to turn over the counterfeit goods and so were likely to continue selling the counterfeit goods, the district court had no choice but to conclude that Vuitton would suffer irreparable injury in the absence of a seizure.

■ The district court's final reason for not entering the seizure order was a reluctance to employ the U.S. marshals. But the statute specifically calls for the U.S. marshals, or designated law enforcement officers to conduct the seizures. Congress, therefore, fully expected U.S. marshals to conduct these seizures; in fact, the Senate Report notes that having U.S. marshals, rather than private parties, conduct the seizures would be more likely to preserve public order. S.Rep. 526, 98th Cong., 2d Sess. 17 (1984), *reprinted in*, Gilson 34–528, 34–544. In the face of this clear Congressional intent, the district court's reluc-

tance to employ the U.S. marshals to make the requested seizures was inappropriate.

Because Vuitton has shown that its application meets all the requirements of § 1116(d)(4), the district court's denial of that application will be reversed.

## IV.

The denial of Vuitton's application for a § 1116(d) ex parte seizure order is immediately appealable pursuant to 28 U.S.C. § 1292(a)(1) and was an abuse of discretion. While we are mindful that the district court cannot now provide Vuitton with the relief Congress intended it to have, we will remand the case with instructions to schedule a § 1116(d)(10) hearing immediately and if Vuitton carries the burden there placed upon it, to grant whatever interim relief the district court can fashion to remove the allegedly infringing goods from commerce and to preserve whatever evidence of infringement may still be available.