

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-28-2004

# Lorillard Tobacco Co v. Bisan Food Corp

Precedential or Non-Precedential: Precedential

Docket No. 03-3151

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lorillard Tobacco Co v. Bisan Food Corp" (2004). *2004 Decisions*. Paper 429.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/429

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-3151

LORILLARD TOBACCO COMPANY
a Delaware corporation,

*Appellant*

v.

BISAN FOOD CORP. d/b/a NEW WAY
SUPERMARKET,
ALI SAYAM, HAMED SAYAM,
SAMMY J. ABDUL


_____

NO. 03-3160

LORILLARD TOBACCO COMPANY
a Delaware corporation,

*Appellant*

v.

EDWIN LIQUOR STORE;
ANNA RODRIGUEZ


_____

NO. 03-3161

LORILLARD TOBACCO COMPANY

a Delaware corporation,

*Appellant*

v.

JOHN DOE CORP. d/b/a
KRAUSZER'S;
SUBHASH PATEL


_____

On Appeal From The United States
District Court For The District Of New
Jersey
(D.C. Nos. 03-cv-03445, 03-cv-02132,
03-cv-02807)
Honorable Katharine S. Hayden, District
Judge
_____

Argued June 15, 2004
Before: ALITO, SMITH and BECKER,
*Circuit Judges*.


(Filed July 28, 2004)

ERIC S. ARONSON (ARGUED)
Greenberg Traurig
200 Campus Drive
P.O. Box 677
Florham Park, NJ 07932

*Attorney for Appellant*


_____

OPINION OF THE COURT
_____

BECKER, *Circuit Judge*.

This case concerns a District Court's refusal to issue, at the behest of cigarette manufacturer Lorillard Tobacco Co. ("Lorillard"), ex parte orders directing the seizure from three New Jersey retailers (collectively, the "defendants") of allegedly counterfeit Newport brand cigarettes, under the Trademark Counterfeiting Act of 1984 (the "Act"), Pub. L. No. 98-473, Title II, ch. XV, 98 Stat. 2178, *codified in relevant part at* 15 U.S.C. § 1116(d). In ruling on Lorillard's applications for ex parte seizure, the District Court declined to find, pursuant to 15 U.S.C. § 1116(d), either that (1) "an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 [relating to counterfeited trademarks]," or (2) the defendants or their associates "would destroy, move, hide, or otherwise make [the counterfeit] matter inaccessible to the court, if [Lorillard] were to proceed on notice." Accordingly, the District Court refused to issue the requested seizure orders, and for two of the defendants issued broad temporary restraining orders (TROs), one of which is rescribed *infra* note 2. Finding that the District Court correctly interpreted § 1114(d), that its factual findings are not clearly erroneous, and that it did not abuse its discretion, we will affirm.

## I. Facts and Procedural History

Lorillard is the holder of several registered trademarks affiliated with the Newport brand of mentholated cigarettes. As the number one brand of menthol cigarettes (and the overall number two brand) in the United States, the Newport brand has become a target of counterfeit cigarette makers. This is a consolidated appeal of three cases against three different defendants who allegedly dealt in these counterfeit Newport cigarettes. Each of the cases was pursued separately in the District Court, though all three were heard by the same District Judge. The cases are, in every relevant sense, indistinguishable, and the record in one case (against Edwin Liquor Store) establishes the reasons for the District Court's refusal to issue the ex parte seizure orders requested in all three cases. For the sake of completeness, we will briefly describe the procedural history of the other cases as well.

### A. Edwin Liquor Store

Edwin Liquor Store ("Edwin") is a retail liquor store located in a residential neighborhood in Newark, New Jersey. On April 10, 2003, a Lorillard sales representative, charged with, *inter alia*, ensuring that fresh Lorillard cigarettes are available for sale at retailers, discovered what he believed to be stale Newport products based on product codes imprinted on the packages at Edwin. He removed four packs of cigarettes from the shelves, and replaced them with fresh product. Upon closer examination, the stale products were determined to be counterfeits. They also either lacked valid state tobacco tax stamps or were improperly stamped under state law.

Lorillard commenced this suit on May

12, 2003, by filing a complaint and making an emergency ex parte application for a seizure order and a TRO, and seeking a preliminary injunction. Though it agreed with Lorillard at oral argument that many of the statutory requirements for ex parte seizure had been met, the District Court declined to find that "Defendants, or other persons acting in concert with the defendants, may destroy, move, hide, or otherwise make the merchandise bearing a counterfeit of the Lorillard Marks inaccessible to the Court if Lorillard were to proceed on notice to Defendants," or that "[e]ntry of an order other than an ex parte seizure order will not adequately achieve the purposes of 15 U.S.C. § 1114 to preserve to Lorillard its remedies for trademark infringement."[1] The Court did,

_____

[1] In full, the statute at issue reads:

(4) The court shall not grant such an application [for ex parte seizure] unless—

(A) the person obtaining an order under this subsection provides the security determined adequate by the court for the payment of such damages as any person may be entitled to recover as a result of a wrongful seizure or wrongful attempted seizure under this subsection; and

(B) the court finds that it clearly appears from specific facts that—

(i) an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title;

(ii) the applicant has not publicized the requested seizure;

(iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;

(iv) an immediate and irreparable injury will occur if such seizure is not ordered;

(v) the matter to be seized will be located at the place identified in the application;

(vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

(vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy,

3

however, grant a broad TRO pending a preliminary injunction hearing. The TRO directed Edwin to cease dealing in counterfeit Lorillard products and preserve the goods in question, along with all materials, packaging, documents, and business records related to any goods bearing genuine or counterfeit Lorillard marks.[2]

> move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

15 U.S.C. § 1116(d)(4).

[2]In full, Edwin and its proprietor, Anna Rodriguez, "and any of their officers, agents servants, employees, and attorneys and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise" (collectively referred to as "Defendants" here and in the District Court's order) were temporarily restrained from "directly or indirectly":

> (i) Using any reproduction, counterfeit, copy, or colorable imitation of the Lorillard Marks in connection with the importation, sale, offering for sale, or distribution of cigarettes in the United States;

> (ii) using the Lorillard Marks or any reproduction, counterfeit, copy, or colorable imitation of the same in any manner likely to cause others to believe that defendants' products are connected with Lorillard or are genuine Lorillard products if they are not;

> (iii) passing off, inducing, or enabling others to sell or pass off any merchandise which is not genuine Lorillard merchandise as and for genuine Lorillard merchandise;

> (iv) making any false or misleading statements regarding Lorillard or its respective goods, or the relationship between Lorillard, on the one hand, and Defendants, on the other hand;

> (v) committing any other acts calculated to cause purchasers to believe the Defendants' products are Lorillard products;

> (vi) importing, shipping, delivering, distributing, holding for sale, returning, transferring, or otherwise moving or disposing of in

4

any manner such cigarettes falsely bearing one or more of the Lorillard Marks or any reproduction, counterfeit, copy or colorable imitation of the same; and

(vii) assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the above paragraphs (i) through (vi);

The defendants were further restrained from "selling, moving or otherwise disposing of any goods, boxes, labels, packaging or product bearing the Lorillard marks; . . . . [or] other than pursuant to a discovery instrument propounded by Lorillard or an order of this Court, moving, destroying, or otherwise disposing of any goods, boxes, labels, packaging or other items or documents bearing any reproduction, counterfeit, or imitation of the Lorillard Marks[; or] removing, destroying or otherwise disposing of any business records or documents relating in any way to the manufacture, importation, acquisition, purchase, distribution, or sale of goods or merchandise bearing any of the Lorillard Marks or any reproduction, counterfeit or imitation thereof." Finally, the Defendants were ordered to "allow[] a Lorillard representative to inspect all goods, boxes,

The Court explained its refusal to issue the ex parte seizure order at oral argument:

I am constrained to conclude that Lorillard has failed to make the requisite showing that no other method of preserving a state of affairs on which a court can provide effective final relief exists. And this is the sole method, this seizure order, this ex parte seizure order is the sole method.

There is no showing of prior disobedience or destruction of evidence on the part of Edwin Liquor Store or its owner, its registered owner Anna Rodriguez. There is an assertion by Lorillard of the opportunity to destroy evidence, but that is based upon Lorillard's assertions and not based upon a showing of this particular, to this particular entity. Nor did I hear from [counsel for Lorillard], who has been candid and forthright and clearly experienced in this area, that other merchants with which Edwin Liquors might reasonably be combined [sic; compared?] have destroyed evidence in the past. Merely that there is the opportunity to do so.

The District Court continued:

labels, products, etc. bearing the Lorillard marks to determine their authenticity."

5

I do not find that an order other than a seizure order is not adequate to provide final and effective relief to Lorillard. . . . I do not find that there has been any showing that the person against whom the seizure is to be ordered, "would destroy, move, hide, or otherwise make such matter inaccessible to the court" if notice were given, other than the assertion that there exists the opportunity for such. . . . [I]t is really a failure to demonstrate, number one, of § 1116(d)(4)(B) that an order other than a seizure order is not adequate. And number seven, that the person against whom seizure would be ordered would destroy, move, hide, or otherwise make such matter inaccessible to the court if notice were given. And therefore, I am denying the application for a seizure order.

In short, the Court concluded that "more than anything else, the statute contains rock solid requirements that I find are not met here." Lorillard filed a notice of appeal, and moved to proceed ex parte on appeal, that is, without giving Edwin notice of the appeal. The Court denied Lorillard's motion.

## B. John Doe Corp. (Krauszer's)

John Doe Corp. ("Krauszer's") is a retail grocery store located in Wallington, New Jersey. On May 28, 2003, a (different) Lorillard sales representative discovered at Krauszer's what he believed to be stale Newport products, again based on product codes imprinted on the packages. Five packs of cigarettes were removed from the shelves, and replaced with fresh product. As with the packs taken from Edwin, the stale products turned out, on closer examination, to be counterfeit and lacking valid tax stamps or improperly stamped under state law.

Lorillard commenced suit on June 12, 2003, again by filing a complaint and making an emergency ex parte application for a seizure order and a TRO, and seeking a preliminary injunction. As with the Edwin case, the District Court agreed that some statutory factors were met, but again declined to find that "Defendants, or other persons acting in concert with the defendants may destroy, move, hide, or otherwise make the merchandise bearing a counterfeit of the Lorillard Marks inaccessible to the Court if Lorillard were to proceed on notice to Defendants," or that "[e]ntry of an order other than an ex parte seizure order will not adequately achieve the purposes of 15 U.S.C. § 1114 to preserve to Lorillard its remedies for trademark infringement."

Although the District Court did not hear oral argument in the Krauszer's case, as it had in the Edwin case, the order it entered in the Krauszer's case—which granted a TRO similar to the one issued in the Edwin case, but refused ex parte seizure—explained that its ruling was "consistent with its analysis of the applicable statutory and case law set forth in its bench ruling on May 13, 2003 in the case of *Lorillard Tobacco Co. v. Edwin Liquors* [sic], Docket No. 03-2131." We understand this to mean that the District Court declined, as it had in the Edwin

6

case, to make the factual findings necessary under the statute to issue an ex parte seizure order. While this appeal has been pending, the parties have voluntarily dismissed the action as settled.

## C. Bisan Food Corp.

Bisan Food Corp d/b/a New Way Supermarket ("Bisan") is an independent retail grocery store located in Union City, New Jersey. On June 26, 2003, the same Lorillard sales representative that serviced Edwin, again acting on product codes, discovered what he believed to be stale Newport products at New Way Supermarket. Ten packs of cigarettes were removed from the shelves and replaced with fresh product. As in the other two cases, closer examination revealed counterfeit goods that were improperly stamped under state law or without valid tax stamps.

Lorillard commenced this suit on July 23, 2003, again by filing a complaint and making an emergency ex parte application for a seizure order and a TRO, and seeking a preliminary injunction. The District Court, having by this time adjudicated the Edwin and Krauszer's matters, in which Lorillard had "rel[ied] on virtually identical arguments, briefs, and supporting certifications," determined that "a prompt appearance by both sides is of assistance to the Court in evaluating the extent of relief to which plaintiff is entitled." Thus the District Court did not issue a TRO, and directed Lorillard to proceed against Bisan on notice (i.e., by serving a summons and complaint upon Bisan pursuant to Fed. R. Civ. P. 4). Lorillard filed a notice of appeal from the denial of the ex parte seizure order, and asked this Court for a stay of the District Court's order to proceed against Bisan on notice. We denied the stay, and Lorillard subsequently withdrew its request for an ex parte TRO against Bisan, so as to avoid giving them notice of the litigation before the District Court. Lorillard has since served Bisan with certain materials (its brief and appendices) in connection with the present appeal.

## II. Jurisdiction

We have an independent obligation at the threshold to examine whether we have appellate jurisdiction. *Gov't of V.I. v. Hodge*, 359 F.3d 312, 317 (3d Cir. 2004); *Vuitton v. White*, 945 F.2d 569, 571 (3d Cir. 1991). In *Vuitton*, we held that we have statutory appellate jurisdiction under 28 U.S.C. § 1292(a)(1) over interlocutory appeals from orders denying ex parte seizure. 945 F.2d at 571-74; *but see In re Lorillard Tobacco Co.*, 370 F.3d 982 (9th Cir. 2004) (holding that the denial of an ex parte seizure order is not immediately appealable). We are, of course, bound by *Vuitton* here. *See* Third Circuit IOP 9.1 ("Policy of Avoiding Intra-Circuit Conflict of Precedent"). In *Vuitton*, we also noted that the apparent mootness of the dispute did not deprive us of Article III jurisdiction. "Now that notice has been given, a seizure order cannot be granted ex parte and may well be ineffective. Nevertheless, we agree with Vuitton that while this case might otherwise be moot, it falls within the exception from the

mootness doctrine for cases 'capable of repetition, yet evading review.'" *Vuitton*, 945 F.2d at 571 n.1 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

Though we did not discuss the point at length in *Vuitton*, one could argue that the history of the relationship between the parties there was critical to our conclusion that the dispute was "capable of repetition": Vuitton, a designer of high quality handbags and luggage, had repeatedly pursued the same defendants, street vendors of counterfeit Vuitton merchandise. *See Vuitton*, 945 F.2d at 570. There is no such prior history between Lorillard and any of the defendants—Lorillard does not allege that, prior to the events at issue here, it knew or even suspected any of the defendants of dealing in counterfeit cigarettes—and consequently, we have no basis to suspect that this dispute is likely to be repeated among these same parties.

In the present ex parte procedural posture, however, what matters with respect to mootness is whether the party seeking the order can demonstrate that it is likely to request such orders in the future against *some* defendant (not necessarily the *same* defendant). At bottom, "capable of repetition, yet evading review" is a pragmatic exception that tempers the mootness doctrine in situations where denial of appellate review works a hardship on the parties. When there is only one party exposed to such hardship—the party seeking the ex parte order—it seems needlessly inflexible to say that that party must demonstrate that it will again confront the same defendants. Lorillard has amply demonstrated that cigarette counterfeiting is a serious and widespread problem for it; for example, Lorillard represents that by the beginning of 2004 it had filed, in the District of New Jersey alone, some sixteen different complaints against different defendants seeking ex parte seizure relief. Thus we conclude that the appeals fall within the "capable of repetition, yet evading review" exception to mootness. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 602-03 (1982); *Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 61-62 (3d Cir. 1991); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1065-66 (3d Cir. 1984); *Luther v. Molina*, 627 F.2d 71, 73-74 (7th Cir. 1980).

One final jurisdictional matter commands our attention. As we note above, during the pendency of this appeal, Lorillard settled its case against Krauszer's. In many circumstances settlement would moot a pending appeal. *See Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363 (1960). This rule of thumb does not apply, however, when a case falls within the "capable of repetition, yet evading review" exception to mootness. *See Int'l Union, United Auto. Workers v. Dana Corp*, 697 F.2d 718, 721 (6th Cir. 1983) (*en banc*). Thus we also have jurisdiction over the appeal in the Krauszer's case.

III. The Merits

In *Vuitton*, we articulated the standard of review over a district court's denial of a motion for ex parte seizure under 15

U.S.C. § 1116(d). The standard is the same used for review of an order granting or denying a preliminary injunction: "We review a district court's ruling . . . only to determine if there has been (1) an abuse of discretion, (2) an error of law, or (3) a clear mistake of fact." *Vuitton*, 945 F.2d at 574 (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 198 (3d Cir. 1990)). Here, the form and substance of the District Court's ruling places our review in the first and third categories: Did the District Court abuse its discretion, or were its factual findings clearly erroneous?[3]

The two statutory elements at issue here—the elements that the District Court pointedly declined to find on the record before it—are 15 U.S.C. § 1116(d)(4)(B)(i) and (vii), which require a court issuing an ex parte seizure order to find, respectively, that "an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title" and that "the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." Though not identical, these are in effect two sides of the same coin: "Proceed[ing] on notice" (i.e., not ex parte) will usually entail serving the defendant with a TRO and proceeding to an adversary hearing on a preliminary injunction. A finding upon emergency application that proceeding on notice would result in the destruction, removal, or hiding of the counterfeit matter is arguably tantamount to a finding that the defendant will not comply with a TRO, which in turn would suggest that nothing less than ex parte seizure is required to vindicate the trademark holder's rights.

We pose the issue in this way because it gets us to the fundamental factual inquiry the District Court focused on, and its finding that we review for clear error: Could the defendants be trusted to comply with the order of a Federal District Court? Finding no evidence that the defendants

---

[3]Lorillard argues strenuously that the District Court's comments at oral argument on the Senate Report accompanying the Act led to an erroneous legal conclusion that the Act contains a "one free bite" exception, that is, that ex parte seizure is not available absent a showing of prior disobedience of a court order by the defendant. Prior disobedience is surely highly probative of some of the statutory elements—for example, § 1116(d)(4)(B)(vii) requires a determination that "the person against whom seizure would be ordered . . . would destroy, move, hide [etc.]" the counterfeit matter. But there is no statutory basis for a *per se* requirement that prior disobedience be shown to obtain an ex parte seizure order. At all events, we do not understand the District Court to have relied on such a legal conclusion in reaching the determination it did; as our excerpts from oral argument make clear, Lorillard was ultimately denied relief on factual and discretionary grounds, not on a legal

ground.

9

could not be trusted, the District Court concluded that they could, and that they should be presumed to be willing to abide by a TRO. The presumption can run no other way, for absent extenuating circumstances, we generally do not assume that parties will disobey a court order. *Cf., e.g.*, *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71, 78 (3d Cir. 1989) ("It is reasonable to expect that a valid court order will be obeyed."). Moreover, fundamental fairness dictates that presumptions generally should not run against the absent party in an ex parte proceeding. The Act directs the court to consider whether the record discloses reasons to rebut this presumption.

The District Court followed this course. It expressly noted that "Lorillard has failed to make the requisite showing that no other method of preserving a state of affairs on which a court can provide effective final relief exists." It observed that Lorillard could have put in direct evidence that the defendants had not complied with other court orders, and stated that, on the record before it, "there is no showing of prior disobedience or evidence of destruction on the part of Edwin Liquor Store or its owner, its registered owner Anna Rodriguez." The District Court further suggested that Lorillard could have shown that the defendants were comparable to other retailers who had flouted court orders, but again observed that, on the record before it, Lorillard had not shown that "other merchants with which Edwin Liquors might reasonably be combined [sic; compared?] have destroyed evidence in the past."

Herein lies a critical difference between this case and *Vuitton*. In *Vuitton*, the defendants were street vendors who sold counterfeit Vuitton merchandise. Even setting aside that Vuitton had previously secured a permanent injunction against some of the defendants in the new action, *Vuitton*, 945 F.2d at 570, the unmistakable lesson from prior proceedings was that these street vendors would not even appear in court after being served, let alone comply with a TRO, *id.* at 575. Moreover, though the *Vuitton* Court did not discuss it, common sense suggests that street vendors, being itinerant and lacking significant assets, have relatively little to fear from the District Court's contempt powers.

The record before the District Court in the cases now before us supports (though does not compel) the opposite inferences: First, there is no evidence that these defendants have previously failed to appear in court when required; indeed, there has been no prior legal action at all against these defendants. Second, there is not even the suggestion that small independent retailers with fixed places of business are as a class unlikely to comply with a court order. Third, these defendants—incorporated businesses with inventories, assets, and a fixed physical presence—have much to lose if held in contempt. Lorillard can point to no direct evidence in the record to the contrary. Especially in light of the Act's emphatic command that the elements supporting ex parte seizure "clearly appear[] from specific facts," 15 U.S.C. § 1116(d)(4)(B), the District Court's factual findings were not clearly erroneous.

10

One argument from Lorillard—perhaps its strongest—remains. The cigarettes recovered from the defendants' stores did not have the state tobacco tax stamps required by New Jersey law—the stamps were either missing or invalid. As Lorillard points out, authentic cigarettes distributed through legitimate channels will have valid tax stamps, but counterfeit cigarettes, distributed through a black market, do not. This difference provides part of the profit motive for retailers to sell counterfeit cigarettes: The untaxed, counterfeit cigarettes can be procured at a lower cost than taxed, authentic cigarettes, but the untaxed, counterfeit cigarettes will be sold at the same price as the taxed, authentic product—at the statewide mandatory minimum price established by New Jersey's Unfair Cigarette Sales Act, N.J. Stat. Ann. 56:7-18 to -38.[4] The defendants' actions

seemingly expose them to the criminal sanctions of the Unfair Cigarette Sales Act, N.J. Stat. Ann. 56:7-20(b), in addition to their possible federal criminal liability under 18 U.S.C. § 2320 for trafficking in counterfeit goods, and possible violations of criminal laws against illegal importation and tax evasion. This, Lorillard contends, gives the defendants a strong incentive to destroy or otherwise dispose of the cigarettes if they learned (by receiving notice of Lorillard's civil trademark infringement suit) that they had been discovered.

There is much force to this argument. The District Court, however, rejected it, commenting that "[t]here is an assertion by Lorillard of the opportunity to destroy evidence, but that is based upon Lorillard's assertions and not based upon a showing of this particular, to this particular entity." As this determination is more discretionary and predictive than it is factual, we review the District Court's decision for abuse of discretion rather than for clear error. Though the District Court could have more fully articulated its reluctance to accept this particular line of argument, it did not abuse its discretion in rejecting Lorillard's position, especially in light of the otherwise weak factual record.

Two reasons support our conclusion. First, Lorillard's argument establishes an incentive, but the statute requires something more certain—for example, one

---

[4]Strictly speaking, the Unfair Cigarette Sales Act provides a mandatory minimum price for sales by distributors to retailers, currently $51.03 per carton (200 cigarettes) for distributor-delivered cigarettes, of which $20.50 represents the tax paid by the distributor to the state. Competition among distributors likely stabilizes distributor sales prices at this level, and competition among many outlets for retail purchase of cigarettes likely keeps retail prices at a level just above the distributor price. The ultimate effect is a stabilization of retail prices within a narrow range, allowing distributors and retailers of untaxed cigarettes to reap the $20.50 in unpaid taxes—on top of the difference in manufacturer price between authentic and (presumably lower-cost)

counterfeit cigarettes. The profit margin, and motive, are thus enormous.

of the requirements is met only by a finding that the defendant "*would* destroy, move, hide [etc.]" the counterfeit matter. § 1116(d)(4)(B)(vii) (emphasis added). Second, if we found an abuse of discretion here, Lorillard's argument would become a *per se* rule that ex parte seizure must be ordered when counterfeit cigarettes are involved. Indeed, arguably *anyone* who is intentionally selling *any* counterfeit goods has—by virtue of the threat of criminal sanction from the criminal trademark counterfeiting statute, 18 U.S.C. § 2320—an incentive to dispose of those counterfeit goods. In that light, Lorillard's incentive-based argument could logically be extended to cover *all* trademark counterfeiting, which would render most of the specific factors of § 1116(d)(4) a nullity. We therefore must reject Lorillard's argument that the District Court abused its discretion in rejecting its incentive-based argument.

## IV. Conclusion

On the face of the statute it is clear that ex parte seizure is not to be ordered as a matter of course. In this respect, our opinion in *Vuitton* represents the extreme case, as we expressly noted: "If we were to conclude that a § 1116 seizure order would be inappropriate in this case, we would be hard pressed to image a case in which such an order would be appropriate." 945 F.2d 575-76. The cases before us now are not the extreme case, and the District Court was not *required* to order an ex parte seizure. Rather, it was obliged to scrutinize the record, which Lorillard had the obligation to develop; to make findings; and to exercise its sound judicial discretion. For the foregoing reasons, we conclude that the District Court did not commit an error of law, make clearly erroneous factual findings, or abuse its discretion in refusing to issue ex parte seizure orders in these three cases. The orders of the District Court will therefore be affirmed.

12