99 F.3d 334
 43 ERC 1796, 27 Envtl. L. Rep. 20,469,
96 Cal. Daily Op. Serv. 7969,
96 Daily Journal D.A.R. 13,233
 OREGON NATURAL RESOURCES COUNCIL, INC.; Oregon Trout;
Coast Action Group; Coast Range Association; Environmental
Protection Information Center; Garcia River, Friends of
the; Klamath Forest Alliance; Marbly Mountain Audubon;
Mendocino Environmental Center; Mt. Shasta Area Audubon
Society; National Audubon Society; Northcoast
Environmental Center; Pilchuck Audubon Society; Portland
Audubon Society; Save The West; Sierra Club; Siskiyou
Audubon Society; Siskiyou Regional Education Project;
Tenmile Creek Association; Trout Unlimited, CA; Western
Ancient Forest Campaign, Plaintiffs-Appellants,
v.
Michael KANTOR,* Secretary of Commerce;
Rolland A. Schmitten, Assistant Administrator for
National Marine Fisheries Service,
Defendants-Appellees.
 No. 96-15046.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 16, 1996.
Decided Oct. 31, 1996.
 
 Michael R. Sherwood, Sierra Club Legal Defense Fund, Inc., San Francisco, CA, for plaintiffs-appellants.
 Elizabeth M. Osenbaugh (briefed), M. Alice Thurston (argued), United States Department of Justice, Washington, DC, and James A. Coda, Assistant United States Attorney, San Francisco, CA, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California, Susan Yvonne Illston, District Judge, Presiding. D.C. No. CV 95-01844-SI.
 Before CANBY and FERNANDEZ, Circuit Judges, and KING, District Judge.**
 FERNANDEZ, Circuit Judge:
 
 INTRODUCTION
 
 1
 The Oregon Natural Resources Council and various other environmental and fishing organizations (collectively "ONRC"), appeal the district court's grant of partial summary judgment against them in their citizen suit under the Endangered Species Act of 1973 (ESA), as amended, 16 U.S.C. §§ 1531-44. They sought an injunction to compel the Secretary of Commerce to make more speedy determinations regarding the addition of coho salmon to the endangered species list. We affirm.
 
 BACKGROUND
 
 2
 On October 20, 1993, ONRC filed a petition with the Secretary of Commerce to list coho salmon as an endangered or threatened species throughout its range in Washington, Oregon and California. On January 26, 1994, the Secretary published his determination that the listing of coho salmon may be warranted.
 
 
 3
 On June 1, 1995, ONRC filed a complaint against the Secretary for injunctive and declaratory relief. The complaint alleged, inter alia, that the Secretary had failed to meet the statutory deadline under the ESA within which to make a determination whether coho salmon should be listed as endangered or threatened, and if so, to publish a proposed regulation listing the coho salmon. ONRC argued that, under the ESA, the Secretary had until October 20, 1994, which was one year from the date of filing the petition, to publish the proposed regulation. See 16 U.S.C. § 1533(b)(3)(B). ONRC sought an order compelling the Secretary to make the required determination and to publish a proposed regulation.
 
 
 4
 On July 25, 1995, the Secretary published a proposed regulation listing coho salmon as threatened in California and Oregon, but not in Washington. The Secretary then moved to dismiss ONRC's complaint on the ground that the publication of the proposed regulation mooted the complaint. The district court granted the Secretary's motion to dismiss, but the court also gave ONRC leave to file an amended complaint. ONRC did file an amended complaint, which alleged that although the Secretary had published the proposed regulation, he would soon fail to meet the statutory deadline under the ESA for publishing a final regulation listing coho salmon. ONRC argued that under the ESA the Secretary had until October 20, 1995, which was 24 months from the filing of the petition, to publish the final regulation. See 16 U.S.C. § 1533(b)(6)(A). ONRC sought an order compelling the Secretary to publish the final regulation by October 20, 1995.
 
 
 5
 On October 11, 1995, both ONRC and the Secretary filed motions for summary judgment. The district court held that the Secretary had violated the ESA by failing to publish the proposed regulation by October 20, 1994. However, it also held that the ESA did not require the Secretary to publish a final regulation until July 25, 1996, one year after publication of the proposed regulation. In addition, the district court stated that it was retaining jurisdiction over the matter in case the Secretary failed to meet the July 25, 1996 deadline. Since then the district court has extended the deadline for three months because of a congressionally imposed moratorium. See Environmental Defense Ctr. v. Babbitt, 73 F.3d 867, 872 (9th Cir.1995) (compliance with ESA requirements should be delayed in light of the unavailability of funds). That does not affect the issue before us for review.
 
 STANDARDS OF REVIEW
 
 6
 We review a grant of summary judgment de novo and view the evidence in the light most favorable to the nonmoving party. Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1432 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995).
 
 
 7
 The denial of a preliminary injunction is reviewed for an abuse of discretion. Chalk v. United States District Court, 840 F.2d 701, 704 (9th Cir.1988).
 
 JURISDICTION
 
 8
 In its order, the district court stated that the Secretary's "motion for summary judgment on the issue of the deadline for a final regulation on the coho salmon is GRANTED, and [ONRC's] motion for summary judgment on this issue is DENIED." The district court also retained jurisdiction over part of the case. Because the district court's order did not dispose of all the claims, it is not a final appealable order under section 1291. See Dannenberg v. Software Toolworks, Inc., 16 F.3d 1073, 1074 (9th Cir.1994), cert. denied, --- U.S. ----, 116 S.Ct. 274, 133 L.Ed.2d 195 (1995); Cheng v. Commissioner, 878 F.2d 306, 309 (9th Cir.1989).
 
 
 9
 Nevertheless, we have followed the Supreme Court's reasoning in Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996-97, 67 L.Ed.2d 59 (1981), that an order which itself does not grant or deny injunctive relief is nevertheless appealable under § 1292(a)(1) if it meets the following requirements: 1) the order has the practical effect of entering or refusing to enter an injunction; 2) the order has "serious, perhaps irreparable, consequences"; and 3) immediate appeal is the only way to challenge the order. See Orange County v. Hongkong & Shanghai Banking Corp. Ltd., 52 F.3d 821, 825 (9th Cir.1995); see also Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 905 (9th Cir.1995) (we have jurisdiction under § 1292(a)(1) to review an order granting partial summary judgment where the order "provides the legal authority to issue an injunction."); Tagupa v. East-West Ctr., Inc., 642 F.2d 1127, 1129 (9th Cir.1981) (we look to the effect of the order to determine whether it is appealable under § 1292(a)(1)). All three Carson requirements are met here.
 
 
 10
 ONRC requested that the district court declare that under the ESA the Secretary had 24 months from the filing of the petition to publish the final regulation and that the Secretary must publish the final regulation prior to that deadline. The district court denied the requests and instead declared that under the ESA the Secretary had until July 25, 1996 to publish the final regulation.
 
 
 11
 The first Carson prong is met because the order had the effect of denying injunctive relief. See Self-Realization Fellowship Church, 59 F.3d at 905-06. ONRC's request for injunctive relief was based on its view that the ESA required the Secretary to publish a final regulation by October 1995. When the district court rejected that reading of the ESA, it essentially obviated the need for and denied injunctive relief. In other words, although the district court denominated its decision a grant and denial of summary judgment motions, the "substantial effect" of the order was to deny ONRC's request that the Secretary be ordered to publish the final regulation regarding coho salmon. See Tagupa, 642 F.2d at 1129.
 
 
 12
 The order also satisfies the second Carson prong. The Secretary has already published a proposed regulation listing coho salmon as threatened in California and Oregon. Because strong conservation measures may not be implemented until a final regulation is published, any delay in the publication of the final regulation would likely have serious consequences on the coho salmon population.
 
 
 13
 Finally, an immediate appeal may be the only effective way to challenge the order. A challenge to the district court's order would have to be completed within a relatively short time before the challenge would become moot. See 16 U.S.C. § 1533(b)(6)(A). In other words, if an appeal were not allowed immediately, it is likely that the order would not be reviewed at all. Because all three Carson requirements are met, we have jurisdiction under § 1292(a)(1). See Self-Realization Fellowship Church, 59 F.3d at 905-06; Tagupa, 642 F.2d at 1129; cf. Orange County, 52 F.3d at 827 (jurisdiction lacking under § 1292(a)(1) because order did not have practical effect of refusing injunction).
 
 DISCUSSION
 
 14
 The issue raised by ONRC's appeal is clear: if, as a result of a private petition, the Secretary has published a proposed regulation regarding the listing of a species as threatened or endangered, when is the Secretary required to act on the possible publication of a final regulation? We find that the unambiguous language of the ESA provides the answer: one year from the publication of the proposed regulation.
 
 
 15
 A citizen may petition to place a species on the endangered species list. See 5 U.S.C. § 553(e); 16 U.S.C. § 1533(b)(3)(A). Once that is done, the applicable language of the ESA determines the duties of the Secretary.[1] First, the ESA provides as follows:
 
 
 16
 To the maximum extent practicable, within 90 days after receiving the petition of an interested person under section 553(e) of Title 5 to add a species to, or to remove a species from, either of the lists published under subsection (c) of this section, the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted.
 
 
 17
 16 U.S.C. § 1533(b)(3)(A) (emphasis added). Once that determination is made, the ESA provides that:
 
 
 18
 Within 12 months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted, the Secretary shall make one of the following findings:
 
 
 19
 (i) The petitioned action is not warranted, in which case the Secretary shall promptly publish such finding in the Federal Register.
 
 
 20
 (ii) The petitioned action is warranted, in which case the Secretary shall promptly publish in the Federal Register a general notice and the complete text of a proposed regulation to implement such action in accordance with paragraph (5).
 
 
 21
 (iii) The petitioned action is warranted, but ... precluded....
 
 
 22
 16 U.S.C. § 1533(b)(3)(B) (emphasis added). Finally, the ESA provides that:
 
 
 23
 Within the one-year period beginning on the date on which general notice is published in accordance with paragraph (5)(A)(i) regarding a proposed regulation, the Secretary shall publish in the Federal Register--
 
 
 24
 (i) if a determination as to whether a species is an endangered species or a threatened species, or a revision of critical habitat, is involved, either--
 
 
 25
 (I) a final regulation to implement such determination,
 
 
 26
 (II) a final regulation to implement such revision or a finding that such revision should not be made,
 
 
 27
 (III) notice that such one-year period is being extended under subparagraph (B)(i), or
 
 
 28
 (IV) notice that the proposed regulation is being withdrawn under subparagraph (B)(ii), together with the finding on which such withdrawal is based; or
 
 
 29
 (ii) subject to subparagraph (C), if a designation of critical habitat is involved, either--
 
 
 30
 (I) a final regulation to implement such designation, or
 
 
 31
 (II) notice that such one-year period is being extended under such subparagraph.
 
 
 32
 16 U.S.C. 1533(b)(6)(A) (emphasis added).
 
 
 33
 The language of the ESA regarding the deadlines for action could hardly be more clear. Once a petition is filed, the Secretary has ninety days "after receiving the petition" to determine whether the action petitioned for is warranted. If the action is warranted, the Secretary has "12 months after receiving [the] petition" to publish a proposed regulation. Then, "[w]ithin the one-year period beginning on the date on which [the proposed regulation] is published," the Secretary must publish a final regulation, withdraw the proposed regulation, or give notice that the one-year period is being extended.
 
 
 34
 "Canons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning." United States v. Lewis, 67 F.3d 225, 228 (9th Cir.1995) (citing Sullivan v. Stroop, 496 U.S. 478, 482, 110 S.Ct. 2499, 2502-03, 110 L.Ed.2d 438 (1990); United States v. Ron Pair Enter., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)); see also United States v. Neville, 985 F.2d 992, 995 (9th Cir.), cert. denied, 508 U.S. 943, 113 S.Ct. 2425, 124 L.Ed.2d 646 (1993); Brock v. Writers Guild of America, West, Inc., 762 F.2d 1349, 1353 (9th Cir.1985); Church of Scientology of California v. United States Dep't of Justice, 612 F.2d 417, 421 (9th Cir.1979). Therefore we "look[ ] to legislative history only if the statute is unclear." Lewis, 67 F.3d at 229 (citing Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547-48, 79 L.Ed.2d 891 (1984)). Of course, we do not limit ourselves to the apparent plain meaning of a statute, if doing so leads to " 'absurd or impracticable consequences.' " Church of Scientology, 612 F.2d at 421 (quoting United States v. Missouri Pac. R.R., 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929)); see also Tovar v. United States Postal Serv., 3 F.3d 1271, 1274 (9th Cir.1993); Heppner v. Alyeska Pipeline Serv. Co., 665 F.2d 868, 872 (9th Cir.1981).
 
 
 35
 The deadlines for determining whether action on a petition is warranted and for publishing a proposed regulation are expressly tied to the filing of the petition. In contrast, the deadline for publishing the final regulation does not mention the filing of the petition, but rather expressly makes the deadline dependent on the publishing of the proposed regulation. "Congress is presumed to act intentionally and purposely when it includes language in one section but omits it in another." Estate of Bell v. Commissioner, 928 F.2d 901, 904 (9th Cir.1991); see also Stewart v. Ragland, 934 F.2d 1033, 1041 (9th Cir.1991) ("When certain statutory provisions contain a requirement and others do not, we should assume that the legislature intended both the inclusion and the exclusion of the requirement."). Thus, if Congress had intended to tie the publishing of the final regulation to the filing of the petition it easily could have, just as it did with the other two deadlines. It did not, so we must assume that it did not intend to tie final action to the filing of the petition. See id. The language of the statute is not at all caliginous; it is perfectly perspicuous. It gives the Secretary a full year after the general notice is published.
 
 
 36
 Nor does the answer subtended by the plain language of the statute lead to an absurd result. Delay in the publication of the general notice may be unfortunate, but shortening the one-year period which follows it may also be unfortunate. When the general notice is given, state agencies, foreign nations, professional organizations, scientific organizations, and the general public are all informed of the proposed regulation. 16 U.S.C. § 1533(b)(5)(A)(i), (B)-(D). A public hearing is also contemplated. 16 U.S.C. § 1533(b)(5)(E). It is not at all surprising that Congress left as much as a full year for the receipt and digestion of the additional information likely to flow in from those sources. After all, Congress did want endangered species determinations to be based upon the "best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A). In fine, there is no reason to deviate from the plain language of the statute.
 
 CONCLUSION
 
 37
 Both altruism and self interest lead people to protect endangered species. The decline of one of our fellow travelers on this planet is tragic in itself. It may also be a tocsin which tells us that we are doing something very wrong. Ideally, we would discover the decline and implement a remedy for it immediately. Unfortunately, both the discovery and the implementation take time.
 
 
 38
 We do understand ONRC's concerns and its impatience with delays in the process. Nevertheless, Congress plainly allowed the Secretary one year "beginning on the date on which general notice is published" to take the actions enumerated in the statute. 16 U.S.C. § 1533(b)(6). We hold that the language means precisely what it says. Thus, the district court was correct when it determined that the Secretary had until July 25, 1996 to act.
 
 
 39
 AFFIRMED.
 
 
 
 *
 Michael Kantor is substituted for Ronald H. Brown, Secretary of Commerce, pursuant to Fed.R.App.P. 43(c)(1)
 
 
 **
 The Honorable George H. King, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 In the case of a marine or anadromous species, a petition to list the species as threatened or endangered is directed to the Secretary of Commerce. See 16 U.S.C. § 1533; Reorganization Plan No. 4 of 1970, 84 Stat.2090, 5 U.S.C. Appendix 1