**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: STATE OF ARIZONA; TERRY
GODDARD; PAUL CARTER; DORA B.
SCHRIRO,

STATE OF ARIZONA; TERRY L.
GODDARD, Arizona Attorney
General; PAUL CARTER, Assistant
Attorney General; DORA B.
SCHRIRO, Director of the Arizona
Department of Corrections,
                    *Petitioners,*

                v.

UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
ARIZONA,
                    *Respondent,*

ROBERT V. TUZON,
            *Real Party in Interest.*

No. 07-70300

D.C. No.
CV-04-00235-FRZ

OPINION

Petition for Writ of Prohibition

Submitted May 7, 2007

Filed June 9, 2008

Before: Alex Kozinski, Chief Judge, Ronald M. Gould and
Consuelo M. Callahan, Circuit Judges.

Per Curiam Opinion

6537

## COUNSEL

Paul E. Carter, Dennis P. Schaack, and Terry Goddard, Phoenix, Arizona, for the petitioners.

Hon. Frank R. Zapata, Phoenix, Arizona, for the respondent.

Robert V. Tuzon, Tucson, Arizona, for the real party in interest.

---

**OPINION**

PER CURIAM

This is a petition for a writ of prohibition. Petitioners—State of Arizona, its Attorney General Terry Goddard and Assistant Attorney General Paul E. Carter[1] —seek our intervention, pursuant to 28 U.S.C. § 1651(a), to prohibit the district court from enforcing portions of a scheduling order entered in a prisoner civil rights lawsuit filed by real party in interest Robert V. Tuzon. Petitioners object to provisions of the order that call for petitioners to undertake a review of the subject matter of Tuzon's amended complaint, and to file a report with the district court about their findings. We requested a response from the district court because the propriety of the district court's order is an issue of first impression in this circuit. We have reviewed the responses from the district court, petitioners and the real party in interest, as well as the record of the district court case, and we deny the petition.

I.　FACTS AND PROCEDURAL HISTORY

On May 6, 2004, Tuzon filed a complaint seeking relief under 42 U.S.C. § 1983. On March 1, 2005, the district court screened the complaint, granted Tuzon *in forma pauperis* status and directed that the complaint be served. On January 17, 2006, Tuzon filed an amended complaint alleging, *inter alia*, damages in connection with (1) an attack on Tuzon by other

---

[1]Petitioners have filed a motion to add Dora B. Schriro, Director of the Arizona Department of Corrections, as a petitioner. We grant that motion.

inmates on September 17, 2003; (2) confiscation of Tuzon's legal documents by prison library staff in December 2003; (3) confiscation of Tuzon's money in July 2003, and ongoing through the date of the complaint; and (4) inadequate medical treatment.

On April 3, 2006, after screening the amended complaint, the district court dismissed certain claims and defendants without prejudice, and directed the remaining defendants to file answers to the remaining claims. The district court concluded that Tuzon had stated claims for deliberate indifference to his safety and for denial of access to the courts. The district court dismissed claims that defendants had confiscated Tuzon's personal property and had been deliberately indifferent to his medical needs.

The defendants duly served three separate answers. After the final one was filed, the district court issued the scheduling order that is the subject of this petition. The order requires that defendants review the subject matter of the complaint in order: (1) to ascertain the facts and circumstances underlying the complaint; and (2) to consider whether any action can and should be taken by the institution or other appropriate officials to resolve the subject matter of the complaint. Defendants were further ordered to file a written report with the court, which includes: (1) a thorough explanation of the actions described in the complaint; (2) the results, if any, of the review undertaken by officials responsible for the institution; (3) affidavits to support any facts alleged in the report; and (4) copies of any documents pertaining to the administrative record. The remainder of the order schedules various deadlines for discovery and motions practice.

Defendants' response to the order was due on January 12, 2007. On January 10, 2007, defendants filed a motion to dismiss the complaint, alleging that Tuzon failed to exhaust his claims because he did not complete available administrative grievance procedures with respect to any of the counts alleged

in the complaint. On July 27, 2007, the district court granted in part and denied in part defendants' motion to dismiss, and further stayed enforcement of the order pending disposition of this petition.

## II.   DISCUSSION

### *Standard of Review*

In determining whether a writ of prohibition should issue, we consider the following factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error or manifests a persistent disregard for the federal rules; and (5) whether the district court's order raises new and important problems or issues of law of first impression. *Calderon v. U. S. Dist. Court*, 134 F.3d 981, 983 & n.3 (9th Cir. 1998). Although all five factors need not be satisfied for the writ to issue, the absence of clear error as a matter of law is often dispositive. *See McDaniel v. U.S. Dist. Court*, 127 F.3d 886, 888 (9th Cir. 1997) (absence of clear error may itself dispose of petition).

We review the district court's order for clear error as a matter of law. *See Burlington N. & Santa Fe Ry. Co. v. U. S. Dist. Court*, 408 F.3d 1142, 1146 (9th Cir. 2005) (seeking writ of mandamus to overturn order to produce documents). Here, this standard is informed by the general principle that district courts have wide latitude in controlling discovery, which we review for an abuse of discretion. *See id.* at 1146-47; *see also Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1009 (9th Cir. 2004).

[1] The issue presented here is one of first impression; specifically, whether a district court has the authority to require

a defendant to prepare a *Martinez* report. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (per curiam).[2] The purpose of the report "is to give the court the benefit of detailed factual information that may be helpful in identifying a case involving a constitutional challenge to an important, complicated correctional practice, particularly one that may affect more than the inmate who has filed the 1983 action." *Lewis v. Fong*, Nos. 86-3465, 86-4011 and 86-4616, 1986 U.S. Dist. LEXIS 17837, at *5 (E.D. Pa. Nov. 12, 1986). In *Martinez*, the court indicated that a "record" could be created by requiring state authorities to use administrative or grievance procedures. 570 F.2d at 319-20. The court also explained that the record is especially important to develop the facts as to the color of state law and to enable the trial court to make preliminary decisions on issues like jurisdiction. *Id.*

The Federal Judicial Center has also acknowledged the utility of *Martinez* reports: "By ordering a defendant to file a *Martinez* report early in the litigation, the court can in some cases save time and effort — either that required to dispose of frivolous cases on motion or that required to deal formally with a problem the penal institution might be able and willing to address informally." Federal Judicial Center, *Resource Guide for Managing Prisoner Civil Rights Litigation* § III.C.3.c.3 at 33 (1996).

Petitioners contend that the district court's order is clearly erroneous for five reasons: (1) the order requires a "unilateral super-disclosure" in violation of Federal Rule of Civil Procedure 26; (2) the order grants Tuzon impermissible and excessive injunctive relief; (3) the order circumvents the requirement that Tuzon exhaust his administrative remedies

---

[2]A district court recently directed defendants to file a *Martinez* report, finding authority to do so from *Martinez*, another Tenth Circuit opinion and the Federal Judicial center's report on managing civil litigation. *Orr v. Dawson*, No. CV06-53-S-BLW, 2006 U.S. Dist. LEXIS 68943, at *12 (D. Idaho Sept. 25, 2006).

before filing suit and denies petitioners the benefit of their defense that Tuzon failed to exhaust; (4) the order violates petitioners' due process rights and denies them the benefit of a qualified immunity defense; and (5) the order creates an ethical quandary for petitioners' counsel.

We conclude that the district court did not err or abuse its discretion in directing that petitioners investigate Tuzon's claims and present their findings to the court and to Tuzon. The nature of Tuzon's claims, as well as the timing of the district court's order, satisfies us that under the circumstances in this case any burden of production was appropriately shifted to petitioners.

*District Court Discretion in Managing Prisoner Civil Rights Litigation*

[2] As the parties seem to agree, there is no specific statutory authority either permitting or forbidding the requested report, although the Fifth and Tenth Circuits have approved the use of such reports.[3] *See, e.g.*, *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Martinez,* 570 F.2d 317; *Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975). Absent statutory mandate or precedent from the Supreme Court or the Ninth Circuit, we cannot conclude that the order is erroneous as a matter of law, as that term is used in mandamus analysis. *See Bauman v. U.S. Dist. Court*, 557 F.2d 650, 660 (9th Cir. 1977) (district court order not clearly erroneous where there were no Supreme Court or Ninth Circuit decisions deciding the issue and where there was split of authority in other circuits).

[3] We start with first principles. Federal Rule of Civil Procedure 16 vests the district court with early control over cases

---

[3]The Eighth Circuit affirmed a dismissal based upon a report, but did not specifically address the report's propriety. *See Hendricks v. Havener*, 587 F.2d 21 (8th Cir. 1978).

"toward a process of judicial management that embraces the entire pretrial phase, especially motions and discovery." Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment; *see* Fed. R. Civ. P. 16(a) ("In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences. . . ."). Rule 16 further recognizes the inherent power of the district court to enforce its pretrial orders through sanctions, Fed. R. Civ. P. 16(f), and the discretion of the district judge to apply an appropriate level of supervision as dictated by the issues raised by each individual case. *See*, *e.g.*, Fed. R. Civ. P. 16(c)(2).

For example, district courts are to issue a scheduling order within 120 days after service of the complaint on the defendant, setting various deadlines for joinder, amendment of pleadings, motions and discovery, but the order may also include "other appropriate matters." Fed. R. Civ. P. 16(b). Failure to comply with the scheduling order exposes a party to "any just orders," as determined by the district judge, including dismissal, entry of default or contempt of court. Fed. R. Civ. P. 16(f), 37(b)(2).

**[4]** While the scope of the district court's authority over pretrial proceedings is broad, it is tempered in pro se prisoner civil rights cases. For example, Federal Rule of Civil Procedure 26 specifically exempts pro se prisoner lawsuits from the initial disclosure requirements, Fed. R. Civ. P. 26(a)(1)(B)(iv), and from initial conference requirements, Fed. R. Civ. P. 26(f). *Cf.* Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). The district court is not required to conduct a pretrial conference in prisoner cases, though there is no rule forbidding it. *See* Fed. R. Civ. P. 16(a).

**[5]** In addition, a district court must determine at the outset of the litigation or suit whether a pro se prisoner has filed a colorable action. *See* 28 U.S.C. § 1915A(a)-(b). After screening, the district court may order a response to any surviving

claims and the case proceeds as any ordinary civil litigation would, with a few exceptions. For example, the parties may take discovery and file dispositive motions. *See generally* Fed. R. Civ. P. 12, 26.

**[6]** In this case, the district court did not order production of the *Martinez* report until after petitioners had filed their answer. Since that time, the district court has ruled on petitioners' Rule 12(b) motion, concluding that certain of Tuzon's claims were either exhausted or did not require exhaustion.[4] Thus, this was not a situation where a defendant was called upon to create a record at the outset of the litigation in order to assist the district court to screen the complaint or to determine jurisdiction. However, because the district court has identified defects in the administrative record at this point, an investigation and report seem not only prudent but necessary to determine whether this case involves a legal challenge to an important complicated constitutional issue that may affect more inmates than Tuzon. *See Lewis*, 1986 U.S. Dist. LEXIS 17837, at *5.

---

[4]In their "Unenumerated Motion to Dismiss Under Rule 12(b)," petitioners sought to dismiss all of Tuzon's claims on the basis that he failed to exhaust them before filing suit.

In particular, as to Count I, defendants initially argued that plaintiff submitted no inmate letter or grievance. When Tuzon attached copies of his inmate letter, grievance, and appeal to the Director as exhibits to his response, defendants "conducted an investigation and now assert that Plaintiff's Grievance documents are genuine and that he submitted the documents to security officers assigned to his housing unit, but the documents were not forwarded to . . . [the] Grievance Coordinator." Order dated July 27, 2007, at 4.

Furthermore, in reviewing plaintiff's alleged failure to grieve his denial of eyeglasses (Count IX), defendants initially alleged that plaintiff had not exhausted his remedies, but subsequently "acknowledge[d] that the grievance was filed under the wrong number and that the grievance log entry notes 'whole file missing.' " *Id.* at 10.

*The Order Does Not Provide Tuzon with Impermissible Injunctive Relief*

Petitioners allege that the order provides Tuzon with prospective or injunctive relief, as defined in 18 U.S.C. § 3626, because the terms of the order award Tuzon relief other than compensatory money damages. *See* 18 U.S.C. § 3626(g)(7).

**[7]** Petitioners' definition of "prospective relief" under the statute is correct. However, petitioners provide no authority for their proposition that the terms of the order, issued *sua sponte* by the district court under Federal Rule of Civil Procedure 16, constitute "relief" to Tuzon. *See, e.g.*, *Orange County v. Hongkong and Shanghai Banking Corp. Ltd.*, 52 F.3d 821, 825 (9th Cir. 1995) (fundamental characteristics of injunction include design to accord or to protect some or all of the substantive relief sought by a complaint in more than a preliminary fashion). Tuzon did not request the report in his complaint. Instead, the district court appears to have issued the order in connection with the district court's customary pretrial management prerogatives as a way to create an administrative record to assist the district court and to structure the direction of the litigation. The information to be provided is consistent with ordinary pretrial obligations and reporting requirements in non-prisoner civil cases, where both parties have an affirmative duty to allege at the pretrial conference all factual and legal bases upon which they wish to litigate the case. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609-10 (9th Cir. 1992).

**[8]** Moreover, at this stage, the order does not implicate concerns about overreaching by the district court into daily prison administration. *See Lewis v. Casey*, 518 U.S. 343, 361-63 (1996). Petitioners contend that the order overreaches because it directs prison administrators (including non-defendants) to perform certain tasks and presumably to allocate resources to perform those tasks. We reject this contention for the following reasons. First, a review of the district

court docket reflects that several non-parties have already provided affidavits in support of petitioners' Rule 12(b) motion, and also appear on petitioners' trial witness list. *See*, *e.g.*, Defs. Mot. to Dismiss, Ex. George Decl., Ex. Olson Decl., Defs. Witness List. Second, petitioners provide no information about the amount or kind of additional work the non-parties would have to perform in order to comply with the terms of the order, as opposed to the amount and kind of work they would ordinarily perform for any other prisoner lawsuit or the work they have already performed for this case. Because we cannot analyze the unique burden this order places on petitioners and their employees, we decline to speculate whether the district judge has impermissibly overreached into daily prison administration.

### *The Order Does Not Deprive Petitioners of Their Qualified Immunity Defense*

[9] Petitioners argue that the order denies them the benefit of their qualified immunity defense. But petitioners are free to raise the immunity issue at any time and could have raised it in their Rule 12(b) motion, which was filed before this petition. If petitioners choose to await the disposition of their exhaustion defenses before raising immunity claims, that is certainly their prerogative; however, it is factually inaccurate to allege that the order, rather than petitioners' trial strategy, forecloses the benefits of their immunity defense.

### *Petitioners' Remaining Claims are Either Moot or Not Ripe*

Petitioners argue that the order forces government counsel into an ethical quandary and forecloses their opportunity to move for dismissal on exhaustion grounds. The latter argument is moot because, as noted above, the district court has ruled on petitioners' dismissal motion, filed after the order was entered, finding Tuzon failed to exhaust some claims.

Petitioners' argument that the order places government counsel in an ethical quandary is not yet ripe, as the petition

only alleges that "it is possible" that the order will require government counsel to violate an adverse representation rule.

*CONCLUSION*

**[10]** As a permissible option within its broad discretion, a district court in an appropriate case can issue a *Martinez*-style order that is reasonably tailored to the pretrial needs of the district court to assess the case. While it may be possible in some instances for a *Martinez* order to represent an abuse of discretion by the district court, that is not the case here, where the scope of the investigation and report has been limited by two screening orders and a subsequent dismissal order. In addition, Tuzon's claims of deliberate indifference and retaliation are of a type not limited to Tuzon and thus may affect other inmates. In light of the results of petitioners' investigation of Tuzon's grievance file, the district court could further conclude that, in this case, it was appropriate to create a comprehensive, substitute record. *See Martinez*, 570 F.2d at 319-20.

**[11]** The district court did not clearly err in ordering petitioners to investigate the substance of Tuzon's surviving claims and to file a report containing its findings. Because we find no clear error, we do not reach the remaining *Bauman* factors. The petition for a writ of prohibition is

**DENIED.**